CHEYENNE WY DISTRICT COURT

2120 CAPITOL AVENUE

ROOM 2131

CHEYENNE, WY 82001

## QUI TAM AGAINST

## JUSTICE <u>PEARCE</u> AND THE UTAH SUPREME COURT, JUDGE JAMES BLOCK <u>ZAGEL RETIRED MOB BOSS CHICAGO, IL</u>,

## CHIEF JUDGE MURRAY SNOW PHOENIX, AZ,

## JUDGE NEFF, CARMODY AND MURKOWSKI OF GRAND RAPIDS, MI, AND JUSTICES ROBERTS, GORUSCH, KAVANAUGH AND JACKSON WHO TOOK BRIBES FROM IVANLA TRUMP BEFORE HER OATH OF OFFICE.

KAROL D MAGISTRELLI and on behalf of her disabled

Daughters Rachel Magistrelli and Rebekah R. M. Ryan

1421 Lincolnway

CHEYENNE, WY 82001

307-632-3174

PLAINTIFF

V.

**CHEYENNE, WYOMING POLICE DEPT. A CRIMINAL CORRUPTION ENTERPRISE.**

**415 W. 18TH STREET**

**CHEYENNE, WY 882001**

**307-637-6500**

**RESPONDANTS**

NOW COMES KAROL MAGISTRELLI IN SUPPORT OF HER QUI TAM AGAINST These judges and justices who are perpetrating fraud upon the courts nationwide.

1.  Karol is the material witness in OPERATION GOLIATH STARTED WITH HER reports April 15, 200 of organized crime in the state of Illinois stemming from her ex-husband Dr. Gary Clarence Magistrelli and the 19th judicial court, Waukegan, IL 60687.

2.  Both Judges and Cheyenne, Wyoming police, Phoenix, AZ police and more, are INTERCEPTING EMAILS TO LIZ CHENEY, LIZCHENEY@WYOMING.GOV, FTCCOMPLAINTASSISTANT@FTC.GOV, CRCL@DHS.GOV, RACHEL.MAGISTRELLI@YAHOO.COM, REBEKAH.MAGISTRELLI@GMAIL.COM, AND HUNDREDS MORE PLUS STEALING MAIL, STALKING FOR BRIBES **FROM IVANKA TRUMP KASHIMER AND DONALD TRUMP, PRESIDENT JOE BIDEN, SPEAKER NANCY PELOSI, HUNTER BIDEN, VP HARRIS, BARACK AND MICHELLE OBAMA AND THEIR DAUGHTERS MALIA AND SASHA, AND THEIR ADMINISTRATIONS AND RACKETEERING, VIOLENCE AGAINST WOMEN AND VIOLENCE IN RACKETEERING ACT.**

3.  That Karol is being stalked not only by the Cheyenne WY police department for JUDGE JAMES BLOCK ZAGEL AND CHIEF JUDGE MURRAY SNOW OF PHOENIX but after 30 years by Gary Magistrelli, Karol Magistrellis ex-husband, who is a free based cocaine addict WITH DONALD TRUMP, IVANLA TRUMP KASHIMER, (WITH AVOID DETECTION IN HER THOUSANDS OF FRAUDULENT FILINGS OF KAROL MAGISTRELLI'S SUITS AND HER EMBEZZLING FROM KAROL'S JUDGMENT FUND), JARED KUSHNERS WITH AN S, FORMER U.S. ATTORNEY ZACHARY FARDON AND HIS NANNY TURNED WIFE SHEILA MANNIX FARDON FORMER MRS.

JONES, BRUCE FARDON ONE OF THEIR SONS WHO IS STALKING
KAROL TO THE SAFE HOUSE IN CHEYENNE WY AND HIRING THEM
TO FILE KAROL MAGISTRELLIS SUITS ILLEGALLY IN A FAKE COURT
IN THE SALVATION ARMY ROOM ON 601 20TH STREET, CHEYENNE,
WY WHICH IS ANOTHER MONKEY COURT TRANSFERRED FROM THE
SALVATION ARMY IN FLAGSTAFF TO THE SALVATION ARMY IN
CHEYENNE WHERE KAROL RAN AWAY FROM OVER 100 METH USERS
AND STREET PEOPLE LIVING IN TENTS THAT GARY HIRED TO STALK,
HARASS, AND KILL ME ACCORDING TO THE HOMELAND SECURITY
WITNESS PROTECTION TEAM CIVIL RIGHTS DIVISION.

4. THAT THESE Cheyenne Library computers are full of tracking devices that the
Cheyenne WY police put on them in a conspiracy to stalk Karol Magistrelli and
shut her down every which way so that she does not file a suit against what
DONALD TRUMP, IVANLA TRUMP AND JARED KUSHNERS, THE
OBAMA MOB FAMILY, GEORGE BUSH, AND THE BIDEN MOB FAMILY
ARE DOING TO KAROL AND HER TWO MENTALLY DISABLED
DAUGHTERS FOR 14 YEARS OF HELL ON EARTH.

5. THAT KAROLS JUDGEMENT FUND WAS 1.4 BILLION WHICH BARACK
OBAMA STOLE BY HAVING ZACHARY FARDON FORGE KAROL'S
NAME TO THE U.S. TREASURY JUDGMENT FUND JUNE 2016 WHERE
THEY FLEW IT TO THE PHILIPPINES USING KAROL MAGISTRELLI'S
PASSPORT AND FARDON AND MANNIX (not yet married) put it into a
fraudulently misrepresented holding company for dispersment to congress and all
federal agency directors so that Obama would have them in his back pocket for
the bribes when he executes his plans to become the LEADER OF THE NEW
WORLD ORDER THAT HAS NOW TAKEN PLACE ONLY TRUMP WANTS
TO BE THE LEADER OF IT INSTEAD AND BLOW UP ISRAEL AND
MAYBE CHINA IN WORLD WAR III THAT THEY HAVE BEEN WORKING
ON FOR 20 YEARS.

6. That today Karol magistrelli tried to sign up with TRAVELING MAILBOX AS
HER MAIL IS ALL OVER THE MAP AND HER SIGN IN credentials won't
work.

7. They said on Chat that they sent Karol a WELCOME PAGE AND ONCE SHE
SIGNS IN IT IS ACTIVATED BUT SHE NEVER RECEIVED THE PAGE
AND HOMELAND SECURITY , THE USDOJ, SOME FBI NOT IN THE
FIRST ROUND WITH COMEY A MONSTER AND EVIL CORRUPTION
ENTERPRISE, ARE ALL ON THIS COMPUTER WATCHING THE
CHEYENNE POLICE BLOCKING IT AS THEY ARE HIRED BY DONALD
TRUMP TO BLOCK ANYTHING IF KAROL TRIED TO FILE, IN FACT THE
HOMELAND SECURITY IS TELLING KAROL they are POISED TO KILL
HER the second she files anything against them.

8. Karol has several notes that are in a conversation where they opened a ticket for her #VHE79.

9. THERE IS ONE phone number to call on the chat line #855-749-1737 and then there is another on a website page #919 561-6633 which is a DIRECT LINE. WHERE DOES THE NON DIRECT LINE GO TO?  WALMART?  (EXHIBIT A)

10. The Cheyenne police with ULTIMATE CAUSE ALREADY PUT KAROL'S 19.95 THROUGH TO KAROL'S DESERT FINANCIAL CREDIT UNION AND INTENT TO DO IT AGAIN IF KAROL SIGNS UP AGAIN BUT WHATS THE USE.  SHE CANNOT SIGN IN AND CANNOT RECEIVE ANY MAIL FROM THEM

11. That the order # is 149241 (EXHIBIT B)

12. The ID that Karol used is simply Karol Magistrelli and the password one that she had before as no matter what password she uses the Cheyenne WY police, phoenix, AZ police, Mesa, AZ police,  BROOKLY NY POLICE (EXHIBIT C) BROOKHAVEN, GA POLICE (EXHIBIT D), CHICAGO, IL POLICE (EXHIBIT E) AND MORE ARE ALL HACKING KAROL MAGISTRELLIS EMAILS, TWITTER ACCOUNTS, AND ARE FILING KAROL MAGISTRELLIS SUITS ILLEGALLY IN THE SALVATION ARMY MONKY COURT WITH THE TWO MOST CORRUPT JUDGES IN THE UNIVERSE.

13. That Judge Zagel who was the 7th District court judge in Chicago , IL for 8 years under President Barack Obama and who left me and my daughters separated with them being raised by a KNOWN PEDOPHILE WHO HAD COMPLAINTS TO IL POLICE FROM HIS FIRST WIFE, TRASHED ME AND MY DAUGHTERS ON THE STREETS HOMELESS AND KAROL HAS HAD TO LIVE IN ONE HOMELESS SHELTER AFTER ANOTHER AND SO HAVE HER DAUGHTERS

14. IF WE DO GET INTO A SHELTER MICHELLE OR BARACK OBAMA PAY THEM OFF TO KICK US OUT ALL OVER THE NATION.

15. THAT KAROL WAS TOLD BY HOMELAND SECURITY AND FBI THAT TRUMP PAID OFF THE DESERT FINANCIAL CREDIT UNION TO OPEN ANOTHER ACCOUNT THAT IVAnla will use to siphon off 849.00 from Karol magistrelli's account (and Donald Trump or the Cheyenne WY police just said fu to me but I erased it)  this money is Karol magistrellis social security money from working 34 years as a registered nurse in the state of Illinois without a single glitch with the law and at 56 when she reported the MASSIVE ORGANIZED CRIME THAT OBAMA WANTS TO TAKE OVER THE UNITED STATES, DEVALUE THE DINARIN AFGHANISTAN IRAQ IRAN AND JORDAN, FLOOD THESE COUNTRIES WITH TANKS THAT IVANLA WAS SELLING TO AFGHANISTAN AND GUNS THAT THE PHOENIX POLICE WERE DRIVING OVER THE BORDER IN AZ PAYING $50,000.00 A TRUCKLOAD FOR TWO YEARS!  KAROL FOUND THIS INFO WHEN SHE OBTAINED A

RIDE SHARE FROM CRAIGSLIST BY A 36 YEAR FELON IN PRISON NAMED MIKE MARTINEZ WHO ASKED KAROL IF SHE WANTED TO MAKE $50,000.00 BY PRETENDING SHE WAS HIS GIRLFRIEND  AND RIDE OVER THE BORDER WITH ALL THESE GUNS.

**16.** THEN KAROLS EYE GLASS OPTICIAN TOLD HER HE HAD A FRIEND RUNNING GUNS OVER THE BORDER TO THE RUSSIANS AND THE FBI TOLD KAROL THEY WERE GOING TO COMMUNIST TALIBAN FOR JARED, IVANLA AND DONALD TRUMPS SCHEME, JOE BIDEN AND VP HARRIS AND THEN KAROL READ ALL ABOUT THE GUNS WHICH ALREADY FLOODED THE COUNTRY WHEN COMMUNIST JOE BIDEN LEFT 400+ AMERICANS AND OTHERS FOR LUNCHMEAT WITH THE TALIBAN WHO FLOODED THE COUNTRY OVER NITE. A FEMALE REPORTER WITH "THE HILL" REPORTS ON IT IN YOU TUBE ASKING WHY ARE ALL THE GUNS AMERICAN. I CANNOT FIND IT BUT I TWEETED THE HILL AND I'LL GET BACK TO YOU. IM BEING TOLD THAT I WAS BLOCKED FROM THE ARTICLE BY THE CHEYENNE WY POLICE ONLINE.



THAT

# Log In

Welcome back to your account!

- **The user name or password provided is incorrect.**

User name  karol magistrelli

Password  **************

☐  Remember Username

☐  Keep me logged in

Log In

Billing

Sign Up!

Forgot your information?

Certified privacy

OAuth

17. KAROL TRIED TO LOGIN ON THE LOGIN PAGE BUT IT WOULDN'T WORK AND THEY KNOW THAT I NEVER RECEIVED THE WELCOME PAGE.

18. That the conversation went on a bit and I think they think I'm way out there as who ever heard of police shutting someone down for bribes from DONALD TRUMP WHO IS NOW DONALD TRUMP-KUSHNER, IVANLA TRUMP-KASHIMER, AND JARED KUSHNERS? (EXHIBIT

19. That the Phoenix AZ police are stalking Karol everywhere over state lines namely ANDREW BUESA AND RICHARD LUDWIG MARGULIUS, WHO WERE HIRED TO KILL KAROL MAGISTRELLI AND HER DAUGHTERS THE WAY KAROL UNDERSTANDS IT AND THEY MAY HAVE BEEN PUT ON ICE SOMEWHERE PENDING THIS LAW SUIT AS THEY ARE DEPLORABLE AND WICKED THE MEAN SPIRITED POLICE BRUTALITY AGAINST KAROL AND HER DAUGHTERS FOR BRIBES FROM THIS NUT CASES RUNNING FOR OFFICE WHO WANT TO FORM A WAR WITH RUSSIA AND CHINA IS BEYOND TREASON AND THEY SHOULD BE IN PRISON.

20. THAT THESE POLICE SHUT DOWN A GO FUND ME PAGE WHERE KAROL WAS ADVERTISING FOR JUDGE AND ATTORNEY WHO WONT TAKE BRIBES.

21. THAT EVERY ATTORNEY KAROL HAS CALLED OR EMAILED ENDED UP TAKING BRIBES FROM BARACK OBAMA OR DONALD TRUMP AND IF THEY REFUSE TO TAKE THE BRIBES THEN TRUMP ALLEGEDLY THREATENS THEM WITH DISBARMENT OR

THEY BOTH HIRED THESE BLACK FELON DRUG ADDICTED UNEDUCATED BLUDGEONERS BY THE HUNDREDS TO MAKE KAROL'S DAUGHTERS BRAINS LUNCHMEAT AND BOTH ARE NOW CHRONOLOGICALLY 26 AND 27 BUT AROUND TEN YEARS MENTALLY THE WAY KAROL IS TOLD BY THE HOMELAND SECURITY.

22. *THAT Judge Pearce of the Utah supreme court jumped in for bribes from Ivanla the second Karol moved her to get away from over 400 stalkers that Ivanla, Donald Trump, Jared Kushners, Nancy Pelosi, Michelle Sasha Malia and Barack Obama*

*∘Gary MAGISTRELLI*

*mob family hired,¹or they threaten them with their
children as they are doing with Karol's two
daughters but they won't quit.*

23. As Karol is typing this IVANLA IS PRINTING IT OUT TO FILE IT IN A
COURT MOST LIKELY WITH JUDGE SNOW WHO MADE HIMSELF
CONSERVATOR AFTER STEALING ALL OF KAROL'S JUDGMENT
FUND AND OR JUDGE ZAGEL WHO WROTE AND ORDER TO ALL
JUDGES AND JUSTICES WHO USE DRUGS: COCAINE, METHADONE,
HEROIN, MARIJUANA NOT TO LOCK UP IVANLA TRUMP
KASHIMER ON THOUSANDS OF SERIOUS OVER THE TOP
CRIMINAL ACTIONS THAT THE NORMAL PERSON WOULD BE IN
PRISON FOR LIFE. And it has to be immediately vacated as
JUDGE MURRAY SNOW AND JUDGE ZAGEL MOVED TO
CHEYENNE WYOMING TO FILE HUNDREDS OF KAROLS MOTIONS
AND QUI TAMS FOR THE MONEY AND FOR BRIBES FROM DONALD
TRUMP, IVANLA TRUMP-KASHIMER, JARED KUSHNERS A SLUM
LORD, AND THE OBAMA FAMILY MOB, THE FBI MOB CHRIS
WRAY, JANINE WHEELER, SIBOINE JOHNSON, DAN CAINE, MIKE
HARVEY, MICHAEL ANDERSON NO LONGER WITH THE FBI AND
MORE *10/9/22   JUDGE SNOW FIRED IT!*

24. , THAT Karol's mail was stolen 3x in Arizona by Phoenix police when she tried
to update her registered nursing license and continuing education credits.  The
phoenix police racketeer with the most deadly FBI witness protection team in the
universe who were appointed to steal 100% of everything that Karol ever made
financially in her life. *The FBI IS BARRED DUE TO Agent JMIKE
Wheeler*

25.  Gary Magistrelli forged all her paychecks so she never made more than
$1000.00 a week and she worked all the time as her two daughters were gone and
hidden by the 19ᵗʰ judicial court in retaliation for turning in the biggest organized
crime enterprise in the world. *He paid off All Phx Police As Well*

26. THESE JUDGES HAVE HIDDEN KAROL'S DAUGHTERS FOR 14 YEARS
FROM KAROL WITH SUPERVISED VISITATION WHEN GARY WAS A
CONVICTED SEX OFFENDER AND NOW THEY ARE BRAIN DAMAGED
DUE TO BLUDGEONING BY BARACK AND MICHELLE OBAMA,
DONALD TRUMP, JARED KUSHNERS, PRESIDENT JOE BIDEN WHO
STRANGLED MY DAUGHTER REBEKAH 4X WITH ALEXANDRIA
OCASIO CORTEZ WHO SHOULD HAVE STAYED AS A BAR TENDER,
PARALYZING HER MOUTH, LIPS, TONGUE AND THROAT.

27. That my daughters are adopted from China in 1996 and 1998. Rachel Elizabeth
Magistrelli is from Fujian Province, Fujxou City born March 10, 1996.

**28.** Rebekah Ruth Magistrelli Ryan (she is married to someone who is being hidden from her with her son) was born on October 8, 1996 and adopted when she was two years old. *more    RETALIATION*

**29.** Karol reported Gary for child abuse that tall the police are trying to cover up as two police jurisdictions forged paperwork for Gary when Karol and Gary adopted them.  Little did Karol know that Gary Clarence Magistrelli had child abuse charges from his first wife, and she had family in Poland and ended up running away to save her son THE WAY KAROL UNDERSTANDS THAT STORY.

**30.** When Karol tried that Gary stalked her with a team of pedophiles he knew all over the globe and he bribed 100 bribes to 27 judges in Waukegan, IL many of whom also were free based cocaine addicts like Gary who used cocaine since he was 14 according to the first FBI team from hell.

**31.** That now because Judge Murray Snow the most corrupt judge on the planet stole all of Karol's judgment money that is WANTED BY THIS TEAM OF CO-CONSPIRATORS TRYING TO TAKE OVER THE UNITED STATES WITH A NEW WORLD ORDER WITH OBAMA AS THE LEADER WHERE IF YOU SUBSCRIBE TO THIS YOU ARE PROMISED YOU WILL NEVER GO TO JAIL FOR ANY SINGLE REASON AS THEY CHANGED OVER 350 WELL SETTLED LAWS THAT OUR FOREFATHERS WROTE DELETING ALL *32.* CRIMINAL PROSECUTION FOR FRAUD UPON THE COURT.

**32.** KAROLS DAUGHTER REBEKAH NEEDS TO BE  WITH KAROL IMMEDIATELY AS THE BLUDGEONING LEFT HER WITH EARLY ONSET ALZHEIMERS AND DONALD TRUMP HAS BEEN BRIBING DOCTORS ALL OVER THE MAP NOT TO TREAT HER AND TO "PUT HER ON HOSPICE." WHILE HE AND IVANLA, JARED AND THEIR TEAM OF CORRUPT PERSONAL INJURY ATTORNEYS FILE HUNDREDS OF WRONGFUL DEATH SUITS ON KAROL MAGISTRELLI, RACHEL MAGISTRELLI AND REBEKAH RUTH MAGISTRELLI RYAN BILKING *FARMERS,* ALSTATE AND HUMANA OUT OF BILLIONS WHICH IS ONE OF THE MAIN WAYS THAT DONALD TRUMP MAKES HIS MONEY.

**33.** DONALD TRUMP AND IVANLA, AND MAINLY NANCY  PELOSI ALL HAVE BROTHELS THAT NANCY KEEPS PUTTING MY DAUGHTERS IN AND I HAVE BEEN WRITING MOTIONS DAILY,.

**34.** ~~TO GO ALONG WITH THIS AS~~ IM SHORTENING IT DUE TO THE GRAVITY OF THE SITUATION THAT THERE ARE DOZENS OF HIT MEN HIRED FOR KAROL MAGISTRELI AND HER DAUGHTERS BY IVANKA TRUMP KASHIMER WHO IS HIRING HUNDREDS OF ENTERTAINERS TO DO THE HIRING OF HIT MEN SO THAT IT DOESN'T COME BACK ON HERSELF.

**35.** THAT THERE ARE NUMEROUS MOTIONS AND AFFIDAVITS KAROL SUBMITTED TO GO WITH ALL HER QUI TAMS WITH HOMELAND SECURITY CIVIL RIGHTS DIVISION,

Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security
Building 410, Mail Stop #0190
Washington, D.C. 20528

**Phone:** 202-401-1474 | 1-866-644-8360 (toll free)
**TTY:** 202-401-0470 | 1-866-644-8361 (toll free)
**Fax:** 202-401-4708
**E-mail:** crcl@dhs.gov

**36.**    THAT Karol was transferred to the USDOJ not that it protects anyone as Karol is still left living with bribed women and men who all took bribes from the Cheyenne WY police **and ivanla trump kashimer and her boyfriend father Donald Trump.  Classic incest is the word for this couple in the opinion of a Registered Nurse who worked 34 years without a single glitch with the law until she reported ORGANIZED CRIME IN THE UNITED STATES OF AMERICA AND KAROL AND HER DAUGHTERS ARE HOMELESS WHILE TODAY MICHELLE OBAMA AND IVANLA TRUMP PUT ALL OF KAROL'S JUDGMENT FUND INTO VISA CARDS ACCORDING TO THE UNITED STATES** Oct ___ 2022 **DEPARTMENT OF JUSTICE WHILE THE POLICE TRIED TO STRAND KAROL 15 MILES FROM HOME JACKING AROUND THE CHEYENNE TRANSIT BUS LINE SCHEDUAL AND LYFT SERVICE.  THEY OWE ME MILLIONS IN PUNITIVE DAMAGES BEFORE**

## THEY ARE SENTENCED TO PRISON FOR LIFE FOR TREASON WITH VLADIMIR PUTIN, DONALD TRUMP AND BARACK OBAMA, IVANLA AND THE REST OF THE SCUM IN THE NEW WORLD ORDER FIASCO.

37.    Today on October 7, 2022 the CHEYENNE WY POLICE WHO ARE Illegally left in power to terrorize and steal from AMERICAN CITIZENS NOT JUST KAROL MAGISTRELLI AND HER DAUGHTERS THAT THEY CONSTANTLY PUT IN HARMS WAY WITH FELONS THEY LET OUT OF JAIL FOR BRIBES FROM DONALD TRUMP, IVANLA TRUMP KUSHNER KISHMER KUSHNERS KASHIMER AND WHATEVER THE FLAVORED NAME OF THE DAY IS, CHANGED THE BUS SCHEDULE WITH THE CHEYENNE WY TRANSIT SYSTEM WHICH IS THE WORST BUS SERVICE IN THE UNTIED STATES, SO THAT KAROL WOULD BE STRANDED AT THE DMV WHERE THEY RACKETEERED WITH FORMER USELESS ATTORNEY ZACHARY FARDON TO PUT SMACK ON KAROL'S DRIVERS LICENSE IN ILLINOIS WHERE FARDON, DONALD TRUMP, BARACK OBAMA, TRANNY MICHELLE OBAMA, SASHA AND MALIA OBAMA, JOE BIDEN, VP HARRIS ( WHO STILL HAS NEVER VISTED THE CHILDREN THAT BIDEN AND TRUMP ARE STEALING FROM IMMIGRANTS),  IVANLA THE BRIBE PAYING PUSSY OF THE CENTURY SLEEPING WITH JUDGE SNOW AND WITH ULTIMATE CAUSE ZAGEL AS WELL, SO THAT KAROL CANNOT GET HER DRIVERS LICENSE FIXED AT THE AGE OF 69 WHILE THIS DISGUSTING BUNCH OF MOB THUGS EMBEZZLE FROM HER JUDGMENT FUND WITH IVANLA, JARED KUSHNERS- EVEN WHILE HE'S IN COURT WITH AG NY LETICIA JAMES, AND BEING CHARGED 3.250 MILLION PAYABLE TO THE STATE OF MARYLAND AS A SLUB LORD WHILE HE LIVES IN AN INFLATED APARTMENT IN NY.

38.    THIS IS ONGOING ELDER FINANCIAL ABUSE, ONGOING
EMBEZZLING, ONGOING TREASON AGAINST THE UNITED STATES OF
AMERICA, ONGOING CHILD ABUSE AND INTENTIONAL KIDNAPPING,
ONGOING RACKETEERING WITH THE MOST DISGUSTING GOP
SENATORS TRYING NOT TO GO TO PRISON BY KEEPING MOB BOSS
DONALD TRUMP IN POWER SO THEY CAN ALL OBTAIN A PARDON,
FOR NOT PAYING TAXES, PUTTING THROUGHT THE COMMUNIST
MANIFESTO AND MUSLIM SHARIAH LAW CALLED OBAMA CARE
WHICH DOESN'T CARE FOR ANYONE BUT A BUNCH OF SHYSTERS IN
CONGRESS WHO DON'T WANT TO PAY TAXES AND STIFF THE
AMERICAN PEOPLE.\

39.    THAT KAROL IS CONSTANTLY HARASSED SECOND BY SECOND TO
THE POINT THAT SHE AND BOTH DAUGHTERS WANT TO BE DEAD
AND LET THIS ~~FUCKING~~ GOVERNMENT BLOW THEMSELVES UP WITH
THE MUSLIMS AND FELONS THEY ARE PAYING TO CROSS THE
BORDER AT $1000.00 A PERSON AND A FREE CELL PHONE. IF THEY
JUST COME OVER AND CAUSE HAVOC ON THE AMERICAN PEOPLE
WHICH IS OUR GOVERNMENTS GOAL. HOW MANY SHERIFFS ARE
GOING TO BE MURDERED BY A MEXICAN THAT WE DEPORTED OVER
6 TIMES WHO JUST WALKS OVER THE BORDER SELLING BIDEN
FENTYNAL FOR $1000.00 A BAG AND A FREE CELL PHONE.

40.    AND WHO IS GOING TO DO ANYTHING ABOUT IT THAT WONT TAKE
BRIBES FROM IVANLA THE CONVICTED TALIBAN COMMUNIST
PROSTITUTE NEPOTISTIC PARASITE SATANIC, DEVIOUS, DEVIANT,
BRIBE PAYING ANTI-AMERICAN, ANTI-SEMETIC, AND ANTI-
CHRISTIAN SLUT OF THE CENTURY?

41.    THAT THERE IS A MAJOR PROBLEM AS ALL THESE POLICE AND
JUDGES ARE DOING FREE BASED COCAINE AND THAT IS WHY THE
SLOWNESS OF HOMELAND SECURITY CIVIL RIGHTS, USDOJ AND
ESPECIALLY THE MESS CALLED THE FBI  THAT NEEDS TO BE BLOWN
UP IN EVERY STATE FOR FRAUD UPON THE BANKS AND AMERICAN

PEOPLE.  THEY ARE WORKING FOR VLADIMIR PUTIN, AND BRIBES FROM DONALD TRUMP, IVANLA TRUMP KASHIMER AND JARED THE HOT MESS KUSHNERS WHOS FATHER PAVED THE WAY FOR FEDERAL PRISON.

**42.**   THE ARROWS HERE ARE ADDED BY THE CHEYENNE WYOMING POLICE WHO ARE TOTAL JUVENILES AND MOB CRUD AND NEVER SHOULD HAVE BEEN SELECTED BUT FOR THE FACT THAT THE PARTIES RECRUITING ARE CHOOSING PSYCHOPATHS FOR POLICE NATIONWIDE WHICH IS WHY SO MANY KILL FOR MONEY LIKE THE CHEYENNE WY GARBAGE CALLED POLICE.

WHEREFORE KAROL PRAYS AS FOLLOWS.

A.  THAT THESE JUDGES WHO HAVE MULTIPLE AFFIDAVITS AND MOTIONS WRITTEN BY KAROL MAGISTRELLI TO THE FORMER HOMELAND SECURITY CIVIL RIGHTS DIVISION ARE TAKEN OFF THE BENCH FOR TREASON RACKETEERING WITH THE OBAMA , TRUMP AND BIDEN MOBS DUPING THE AMERICAN PEOPLE WHILE THEY STALK KAROL OVER STATE LINES STARTING FORGED COURTS IN SALVATION ARMYS, FORGED COURTS IN HOTELS AND FILING FORGED INVESTMENT COMPANIES WRITTEN FROM THE BENCH BY BRIBED JUDGE JAMES BLOCK ZAGEL STEALING BILLIONS IN INSURANCE FRAUDS AND CLAIMS AGAINST KAROL MAGISTRELLI AND HER DAUGHTERS INCLUDING HUNDREDS OF FRAUDULENT OBITURARIES, FRAUDULENT INVESTMENT COMPANIES  USED BY DONALD TRUMP TO STEAL KAROL MAGISTRELLIS JUDGEMENT FUND MONEY WHILE HIRING THOUSANDS OF HIT MEN BY THE CHEYENNE WY POLICE, PHOENIX, AZ POLICE, MESA, AZ POLICE, LAS VEGAS  NV POLICE, NANCY PELOSI, JOE BIDEN, SENATORS SAUNDERS, WARRAN, SIMONA,  BOOKER, MCCAINE, GOVERNORS DUCEY, HOLCOMB, CUOMO, SISOLYK DAILY, GORDON, VP HARRIS, AND MORE HOMELESS WHO SHOULD HAVE BEEN APPREHENDED THE SECOND KAROL MAGISTRELLI COMPLAINED .²ADD THE SAFE HOUSE IN CHEYENNE WY HIDING MY DAUGHTERS, AND MORE EMBEZZLING FROM MY JUDGMENT FUND. .

B.  THAT THESE JUDGES ARE PROSECUTED TO THE FULLEST EXTENT OF THE LAW ***WITHOUT ANY PLEA BARGAINING*** AND THAT THEY PAY IN PRISON FOR EVERY SINGLE FELONY THEY HAVE COMMITTED SINCE APRIL 15, 2009 WHEN KAROL REPORTED THIS ORGANIZED CRIME TO THE MOST CORRUPT USDOJ OFFICE IN THE COUNTRY IN CHICAGO ILL RUN BY MOB BOSS U.S. ATTORNEYS PATRICK FITZGERALD AND ZACHARY FARDON.

C. ***THE CONVICTIONS TO INCLUDE THE ATTEMPTED TAKE OVER OF THE UNITED STATES OF AMERICA WITH A  NEW WORLD ORDER IN WHICH THEY WORKED WITH CONGRESS TO CHANGE OVER 350 WELL SETTLED LAWS BY OUR FOREFATHERS IN AN ATTEMPT NOT TO HAVE TO PAY FOR FRAUD UPON THE COURT IN MILLIONS OF INSTANCES THAT NOW HAVE TO BE CORRECTED. THIS IS ESPIONAGE AND INSURRECTION OF THE LIFE OF KAROL MAGISTRELLI AND HER DAUGHTERS AND THE UNITED STATES OF AMERICA.***

**_D.  18 USC 1961-1968 RACKEERING WITH 50 STATES TO DEFRAUD THE UNITED_**
**_STATES AND KAROL MAGISTRELLI AND HER DAUGHTERS,   18 USC 371_**
**_CONSPIRACY TO DEFRAUD THE UNITED STATES OF AMERICA WITH VLADIMIR_**
**_PUTIN._**

**_18 USC 1031 - MAJOR FRAUD AGAINST THE UNITED STATES,_**

# 18 U.S. Code § 1519 - Destruction, alteration, or falsification of records in Federal investigations and bankruptcy,

# 18 U.S. Code § 1001 - Statements or entries generally

(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

(1)

## falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

(2)

makes any materially false, fictitious, or fraudulent statement or representation; or

(3)

makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years.

(b)

Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding.

(c) With respect to any matter within the jurisdiction of the legislative branch, subsection (a) shall apply only to—

(1)

administrative matters, including a claim for payment, a matter related to the procurement of property or services, personnel or employment practices, or support services, or a document

required by law, rule, or regulation to be submitted to the Congress or any office or officer within the legislative branch; or

(2)

any investigation or review, conducted pursuant to the authority of any committee, subcommittee, commission or office of the Congress, consistent with applicable rules of the House or Senate.

(June 25, 1948, ch. 645, 62 Stat. 749; Pub. L. 103–322, title XXXIII, § 330016(1)(L), Sept. 13, 1994, 108 Stat. 2147; Pub. L. 104–292, § 2, Oct. 11, 1996, 110 Stat. 3459; Pub. L. 108–458, title VI, § 6703(a), Dec. 17, 2004, 118 Stat. 3766; Pub. L. 109–248, title I, § 141(c), July 27, 2006, 120 Stat. 603.)

# 5 U.S. Code § 552a - Records maintained on individuals THE SMACK PUT ON KAROL MAGISTRELLI'S DRIVERS LICENSE TODAY BY ZACHARY FARDON IS ONE OF THOUSANDS OF FELONIES HE HAS PERPETRATED IN ORDER TO BURY AND KILL US FOR THE JUDGMENT FUND MONEY AND WHY IS HE NOT IN PRISON ALREADY WITH OBAMA AND TRUMP, IVANLA, JARED AND MICHELLE THE MOST EVIL FIRST LADY OF THE CENTURY.

(a) Definitions.—For purposes of this section—

(1)

the term "agency" means agency as defined in section 552(e) [1] of this title;

(2)

the term "individual" means a citizen of the United States or an alien lawfully admitted for permanent residence;

(3)

the term "maintain" includes maintain, collect, use, or disseminate;

(4)

the term "record" means any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph;

(5)

the term "system of records" means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual;

(6)

the term "statistical record" means a record in a system of records maintained for statistical research or reporting purposes only and not used in whole or in part in making any determination about an identifiable individual, except as provided by section 8 of title 13;

(7)

the term "routine use" means, with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected;

(8) the term "matching program"—

(A) means any computerized comparison of—

(i) two or more automated systems of records or a system of records with non-Federal records for the purpose of—

(I)

establishing or verifying the eligibility of, or continuing compliance with statutory and regulatory requirements by, applicants for, recipients or beneficiaries of, participants in, or providers of services with respect to, cash or in-kind assistance or payments under Federal benefit programs, or

(II)

recouping payments or delinquent debts under such Federal benefit programs, or

(ii)

two or more automated Federal personnel or payroll systems of records or a system of Federal personnel or payroll records with non-Federal records.

(B) but does not include—

(i)

matches performed to produce aggregate statistical data without any personal identifiers;

(ii)

matches performed to support any research or statistical project, the specific data of which may not be used to make decisions concerning the rights, benefits, or privileges of specific individuals;

(iii)

matches performed, by an agency (or component thereof) which performs as its principal function any activity pertaining to the enforcement of criminal laws, subsequent to the initiation of a specific criminal or civil law enforcement investigation of a named person or persons for the purpose of gathering evidence against such person or persons;

(iv)

matches of tax information (I) pursuant to section 6103(d) of the Internal Revenue Code of 1986, (II) for purposes of tax administration as defined in section 6103(b)(4) of such Code, (III) for the purpose of intercepting a tax refund due an individual under authority granted by section 404(e),

464, or 1137 of the Social Security Act; or (IV) for the purpose of intercepting a tax refund due an individual under any other tax refund intercept program authorized by statute which has been determined by the Director of the Office of Management and Budget to contain verification, notice, and hearing requirements that are substantially similar to the procedures in section 1137 of the Social Security Act;

*This Director was bribed according to Home Land Security* [handwritten]

(v) matches—

(I)

using records predominantly relating to Federal personnel, that are performed for routine administrative purposes (subject to guidance provided by the Director of the Office of Management and Budget pursuant to subsection (v)); or

(II)

conducted by an agency using only records from systems of records maintained by that agency;

   if the purpose of the match is not to take any adverse financial, personnel, disciplinary, or other adverse action against Federal personnel;

(vi)

matches performed for foreign counterintelligence purposes or to produce background checks for security clearances of Federal personnel or Federal contractor personnel;

(vii)

matches performed incident to a levy described in section 6103(k)(8) of the Internal Revenue Code of 1986;

(viii)

matches performed pursuant to section 202(x)(3) or 1611(e)(1) of the Social Security Act (42 U.S.C. 402(x)(3), 1382(e)(1));

(ix)

matches performed by the Secretary of Health and Human Services or the Inspector General of the Department of Health and Human Services with respect to potential fraud, waste, and abuse, including matches of a system of records with non-Federal records; or

(x)

matches performed pursuant to section 3(d)(4) of the Achieving a Better Life Experience Act of 2014; [1]

(9)

the term "recipient agency" means any agency, or contractor thereof, receiving records contained in a system of records from a source agency for use in a matching program;

(10)

the term "non-Federal agency" means any State or local government, or agency thereof, which receives records contained in a system of records from a source agency for use in a matching program;

(11)

the term "source agency" means any agency which discloses records contained in a system of records to be used in a matching program, or any State or local government, or agency thereof, which discloses records to be used in a matching program;

(12)

the term "Federal benefit program" means any program administered or funded by the Federal Government, or by any agent or State on behalf of the Federal Government, providing cash or in-kind assistance in the form of payments, grants, loans, or loan guarantees to individuals; and

(13)

the term "Federal personnel" means officers and employees of the Government of the United States, members of the uniformed services (including members of the Reserve Components), individuals entitled to receive immediate or deferred retirement benefits under any retirement program of the Government of the United States (including survivor benefits).

(b) Conditions of Disclosure.—No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—

(1)

to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties;

(2)

required under section 552 of this title;

(3)

for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section;

(4)

to the Bureau of the Census for purposes of planning or carrying out a census or survey or related activity pursuant to the provisions of title 13;

(5)

to a recipient who has provided the agency with advance adequate written assurance that the record will be used solely as a statistical research or reporting record, and the record is to be transferred in a form that is not individually identifiable;

(6)

to the National Archives and Records Administration as a record which has sufficient historical or other value to warrant its continued preservation by the United States Government, or for evaluation by the Archivist of the United States or the designee of the Archivist to determine whether the record has such value;

(7)

to another agency or to an instrumentality of any governmental jurisdiction within or under the control of the United States for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought;

(8)

to a person pursuant to a showing of compelling circumstances affecting the health or safety of an individual if upon such disclosure notification is transmitted to the last known address of such individual;

(9)

to either House of Congress, or, to the extent of matter within its jurisdiction, any committee or subcommittee thereof, any joint committee of Congress or subcommittee of any such joint committee;

(10)

to the Comptroller General, or any of his authorized representatives, in the course of the performance of the duties of the Government Accountability Office;

(11)

pursuant to the order of a court of competent jurisdiction; or

(12)

to a consumer reporting agency in accordance with section 3711(e) of title 31.

(c) Accounting of Certain Disclosures.—Each agency, with respect to each system of records under its control, shall—

(1) except for disclosures made under subsections (b)(1) or (b)(2) of this section, keep an accurate accounting of—

(A)

the date, nature, and purpose of each disclosure of a record to any person or to another agency made under subsection (b) of this section; and

(B)

the name and address of the person or agency to whom the disclosure is made;

(2)

retain the accounting made under paragraph (1) of this subsection for at least five years or the life of the record, whichever is longer, after the disclosure for which the accounting is made;

(3)

except for disclosures made under subsection (b)(7) of this section, make the accounting made under paragraph (1) of this subsection available to the individual named in the record at his request; and

(4)

inform any person or other agency about any correction or notation of dispute made by the agency in accordance with subsection (d) of this section of any record that has been disclosed to the person or agency if an accounting of the disclosure was made.

(d) Access to Records.—Each agency that maintains a system of records shall—

(1)

upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him, except that the agency may require the individual to furnish a written statement authorizing discussion of that individual's record in the accompanying person's presence;

(2) permit the individual to request amendment of a record pertaining to him and—

(A)

not later than 10 days (excluding Saturdays, Sundays, and legal public holidays) after the date of receipt of such request, acknowledge in writing such receipt; and

(B) promptly, either—

(i)

make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete; or

(ii)

inform the individual of its refusal to amend the record in accordance with his request, the reason for the refusal, the procedures established by the agency for the individual to request a review of that refusal by the head of the agency or an officer designated by the head of the agency, and the name and business address of that official;

(3)

permit the individual who disagrees with the refusal of the agency to amend his record to request a review of such refusal, and not later than 30 days (excluding Saturdays, Sundays, and legal public holidays) from the date on which the individual requests such review, complete such review and make a final determination unless, for good cause shown, the head of the agency extends such 30-day period; and if, after his review, the reviewing official also refuses to amend the record in accordance with the request, permit the individual to file with the agency a concise statement setting forth the reasons for his disagreement with the refusal of the agency, and notify the individual of the provisions for judicial review of the reviewing official's determination under subsection (g)(1)(A) of this section;

(4)

in any disclosure, containing information about which the individual has filed a statement of disagreement, occurring after the filing of the statement under paragraph (3) of this subsection, clearly note any portion of the record which is disputed and provide copies of the statement and, if the agency deems it appropriate, copies of a concise statement of the reasons of the agency for not making the amendments requested, to persons or other agencies to whom the disputed record has been disclosed; and

(5)

nothing in this section shall allow an individual access to any information compiled in reasonable anticipation of a civil action or proceeding.

(e) Agency Requirements.—Each agency that maintains a system of records shall—

(1)

maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President;

(2)

collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs;

(3) inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual—

(A)

the authority (whether granted by statute, or by executive order of the President) which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary;

(B)

the principal purpose or purposes for which the information is intended to be used;

(C)

the routine uses which may be made of the information, as published pursuant to paragraph (4)(D) of this subsection; and

(D)

the effects on him, if any, of not providing all or any part of the requested information;

(4) subject to the provisions of paragraph (11) of this subsection, publish in the Federal Register upon establishment or revision a notice of the existence and character of the system of records, which notice shall include—

(A)

the name and location of the system;

(B)

the categories of individuals on whom records are maintained in the system;

(C)

the categories of records maintained in the system;

(D)

each routine use of the records contained in the system, including the categories of users and the purpose of such use;

(E)

the policies and practices of the agency regarding storage, retrievability, access controls, retention, and disposal of the records;

(F)

the title and business address of the agency official who is responsible for the system of records;

(G)

the agency procedures whereby an individual can be notified at his request if the system of records contains a record pertaining to him;

(H)

the agency procedures whereby an individual can be notified at his request how he can gain access to any record pertaining to him contained in the system of records, and how he can contest its content; and

(I)

the categories of sources of records in the system;

(5)

maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination;

(6)

prior to disseminating any record about an individual to any person other than an agency, unless the dissemination is made pursuant to subsection (b)(2) of this section, make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes;

(7)

maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity;

(8)

make reasonable efforts to serve notice on an individual when any record on such individual is made available to any person under compulsory legal process when such process becomes a matter of public record;

(9)

establish rules of conduct for persons involved in the design, development, operation, or maintenance of any system of records, or in maintaining any record, and instruct each such person with respect to such rules and the requirements of this section, including any other rules and procedures adopted pursuant to this section and the penalties for noncompliance;

(10)

establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their

security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained;

(11)

at least 30 days prior to publication of information under paragraph (4)(D) of this subsection, publish in the Federal Register notice of any new use or intended use of the information in the system, and provide an opportunity for interested persons to submit written data, views, or arguments to the agency; and

(12)

if such agency is a recipient agency or a source agency in a matching program with a non-Federal agency, with respect to any establishment or revision of a matching program, at least 30 days prior to conducting such program, publish in the Federal Register notice of such establishment or revision.

(f) Agency Rules.—In order to carry out the provisions of this section, each agency that maintains a system of records shall promulgate rules, in accordance with the requirements (including general notice) of section 553 of this title, which shall—

(1)

establish procedures whereby an individual can be notified in response to his request if any system of records named by the individual contains a record pertaining to him;

(2)

define reasonable times, places, and requirements for identifying an individual who requests his record or information pertaining to him before the agency shall make the record or information available to the individual;

(3)

establish procedures for the disclosure to an individual upon his request of his record or information pertaining to him, including special procedure, if deemed necessary, for the disclosure to an individual of medical records, including psychological records, pertaining to him;

(4)

establish procedures for reviewing a request from an individual concerning the amendment of any record or information pertaining to the individual, for making a determination on the request, for an appeal within the agency of an initial adverse agency determination, and for whatever additional means may be necessary for each individual to be able to exercise fully his rights under this section; and

(5)

establish fees to be charged, if any, to any individual for making copies of his record, excluding the cost of any search for and review of the record.

The Office of the Federal Register shall biennially compile and publish the rules promulgated under this subsection and agency notices published under subsection (e)(4) of this section in a form available to the public at low cost.

(g)

(1) Civil Remedies.—Whenever any agency

(A)

makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection;

(B)

refuses to comply with an individual request under subsection (d)(1) of this section;

(C)

fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or

(D)

fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,

the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

(2)

(A)

In any suit brought under the provisions of subsection (g)(1)(A) of this section, the court may order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct. In such a case the court shall determine the matter de novo.

(B)

The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed.

(3)

(A)

In any suit brought under the provisions of subsection (g)(1)(B) of this section, the court may enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him. In such a case the court shall determine the matter de novo, and may examine the contents of any agency records in camera to determine whether the records or any portion thereof may be withheld under any of the exemptions set forth in subsection (k) of this section, and the burden is on the agency to sustain its action.

(B)

The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed.

(4) In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—

(A)

actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and

(B)

the costs of the action together with reasonable attorney fees as determined by the court.

(5)

An action to enforce any liability created under this section may be brought in the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, without regard to the amount in controversy, within two years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information

required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within two years after discovery by the individual of the misrepresentation. Nothing in this section shall be construed to authorize any civil action by reason of any injury sustained as the result of a disclosure of a record prior to September 27, 1975.

(h) Rights of Legal Guardians.—

For the purposes of this section, the parent of any minor, or the legal guardian of any individual who has been declared to be incompetent due to physical or mental incapacity or age by a court of competent jurisdiction, may act on behalf of the individual.

(i)

(1) Criminal Penalties.—

Any officer or employee of an agency, who by virtue of his employment or official position, has possession of, or access to, agency records which contain individually identifiable information the disclosure of which is prohibited by this section or by rules or regulations established thereunder, and who knowing that disclosure of the specific material is so prohibited, willfully discloses the material in any manner to any person or agency not entitled to receive it, shall be guilty of a misdemeanor and fined not more than $5,000.

(2)

Any officer or employee of any agency who willfully maintains a system of records without meeting the notice requirements of subsection (e)(4) of this section shall be guilty of a misdemeanor and fined not more than $5,000.

(3)

Any person who knowingly and willfully requests or obtains any record concerning an individual from an agency under false pretenses shall be guilty of a misdemeanor and fined not more than $5,000.

(j) General Exemptions.—The head of any agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553(b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from any part of this section except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i) if the system of records is—

(1)

maintained by the Central Intelligence Agency; or

(2)

maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

At the time rules are adopted under this subsection, the agency shall include in the statement required under section 553(c) of this title, the reasons why the system of records is to be exempted from a provision of this section.

(k) Specific Exemptions.—The head of any agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553(b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from subsections (c)(3), (d), (e)(1), (e)(4)(G), (H), and (I) and (f) of this section if the system of records is—

(1)

subject to the provisions of section 552(b)(1) of this title;

(2)

investigatory material compiled for law enforcement purposes, other than material within the scope of subsection (j)(2) of this section: Provided, however, That if any individual is denied any right, privilege, or benefit that he would otherwise be entitled by Federal law, or for which he would otherwise be eligible, as a result of the maintenance of such material, such material shall be provided to such individual, except to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence;

(3)

maintained in connection with providing protective services to the President of the United States or other individuals pursuant to section 3056 of title 18;

(4)

required by statute to be maintained and used solely as statistical records;

(5)

investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment, military service, Federal contracts, or access to classified information, but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence;

(6)

testing or examination material used solely to determine individual qualifications for appointment or promotion in the Federal service the disclosure of which would compromise the objectivity or fairness of the testing or examination process; or

(7)

evaluation material used to determine potential for promotion in the armed services, but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence.

At the time rules are adopted under this subsection, the agency shall include in the statement required under section 553(c) of this title, the reasons why the system of records is to be exempted from a provision of this section.

(l)

(1) Archival Records.—

Each agency record which is accepted by the Archivist of the United States for storage, processing, and servicing in accordance with section 3103 of title 44 shall, for the purposes of this section, be considered to be maintained by the agency which deposited the record and shall be subject to the provisions of this section. The Archivist of the United States shall not disclose the record except to the agency which maintains the record, or under rules established by that agency which are not inconsistent with the provisions of this section.

(2)

Each agency record pertaining to an identifiable individual which was transferred to the National Archives of the United States as a record which has sufficient historical or other value to warrant its continued preservation by the United States Government, prior to the effective date of this section, shall, for the purposes of this section, be considered to be maintained by the National Archives and shall not be subject to the provisions of this section, except that a statement generally describing such records (modeled after the requirements relating to records subject to subsections (e)(4)(A) through (G) of this section) shall be published in the Federal Register.

(3)

Each agency record pertaining to an identifiable individual which is transferred to the National Archives of the United States as a record which has sufficient historical or other value to warrant its continued preservation by the United States Government, on or after the effective date of this section, shall, for the purposes of this section, be considered to be maintained by the National Archives and shall be exempt from the requirements of this section except subsections (e)(4)(A) through (G) and (e)(9) of this section.

(m)

(1) Government Contractors.—

When an agency provides by a contract for the operation by or on behalf of the agency of a system of records to accomplish an agency function, the agency shall, consistent with its authority, cause the requirements of this section to be applied to such system. For purposes of subsection (i) of this section any such contractor and any employee of such contractor, if such contract is agreed to on or after the effective date of this section, shall be considered to be an employee of an agency.

(2)

A consumer reporting agency to which a record is disclosed under section 3711(e) of title 31 shall not be considered a contractor for the purposes of this section.

(n) Mailing Lists.—

An individual's name and address may not be sold or rented by an agency unless such action is specifically authorized by law. This provision shall not be construed to require the withholding of names and addresses otherwise permitted to be made public.

(o) Matching Agreements.—

(1) No record which is contained in a system of records may be disclosed to a recipient agency or non-Federal agency for use in a computer matching program except pursuant to a written agreement between the source agency and the recipient agency or non-Federal agency specifying—

(A)

the purpose and legal authority for conducting the program;

(B)

the justification for the program and the anticipated results, including a specific estimate of any savings;

(C)

a description of the records that will be matched, including each data element that will be used, the approximate number of records that will be matched, and the projected starting and completion dates of the matching program;

(D) procedures for providing individualized notice at the time of application, and notice periodically thereafter as directed by the Data Integrity Board of such agency (subject to guidance provided by the Director of the Office of Management and Budget pursuant to subsection (v)), to—

(i)

applicants for and recipients of financial assistance or payments under Federal benefit programs, and

(ii)

applicants for and holders of positions as Federal personnel,

that any information provided by such applicants, recipients, holders, and individuals may be subject to verification through matching programs;

(E)

procedures for verifying information produced in such matching program as required by subsection (p);

(F)

procedures for the retention and timely destruction of identifiable records created by a recipient agency or non-Federal agency in such matching program;

(G)

procedures for ensuring the administrative, technical, and physical security of the records matched and the results of such programs;

(H)

prohibitions on duplication and redisclosure of records provided by the source agency within or outside the recipient agency or the non-Federal agency, except where required by law or essential to the conduct of the matching program;

(I)

procedures governing the use by a recipient agency or non-Federal agency of records provided in a matching program by a source agency, including procedures governing return of the records to the source agency or destruction of records used in such program;

(J)

information on assessments that have been made on the accuracy of the records that will be used in such matching program; and

(K)

that the Comptroller General may have access to all records of a recipient agency or a non-Federal agency that the Comptroller General deems necessary in order to monitor or verify compliance with the agreement.

(2)

(A) A copy of each agreement entered into pursuant to paragraph (1) shall—

(i)

be transmitted to the Committee on Governmental Affairs of the Senate and the Committee on Government Operations of the House of Representatives; and

(ii)

be available upon request to the public.

(B)

No such agreement shall be effective until 30 days after the date on which such a copy is transmitted pursuant to subparagraph (A)(i).

(C)

Such an agreement shall remain in effect only for such period, not to exceed 18 months, as the Data Integrity Board of the agency determines is appropriate in light of the purposes, and length of time necessary for the conduct, of the matching program.

(D) Within 3 months prior to the expiration of such an agreement pursuant to subparagraph (C), the Data Integrity Board of the agency may, without additional review, renew the matching agreement for a current, ongoing matching program for not more than one additional year if—

(i)

such program will be conducted without any change; and

(ii)

each party to the agreement certifies to the Board in writing that the program has been conducted in compliance with the agreement.

(p) Verification and Opportunity to Contest Findings.—

(1) In order to protect any individual whose records are used in a matching program, no recipient agency, non-Federal agency, or source agency may suspend, terminate, reduce, or make a final denial of any financial assistance or payment under a Federal benefit program to such individual, or take other adverse action against such individual, as a result of information produced by such matching program, until—

(A)

(i)

the agency has independently verified the information; or

(ii) the Data Integrity Board of the agency, or in the case of a non-Federal agency the Data Integrity Board of the source agency, determines in accordance with guidance issued by the Director of the Office of Management and Budget that—

(I)

the information is limited to identification and amount of benefits paid by the source agency under a Federal benefit program; and

(II)

there is a high degree of confidence that the information provided to the recipient agency is accurate;

(B)

the individual receives a notice from the agency containing a statement of its findings and informing the individual of the opportunity to contest such findings; and

(C)

(i)

the expiration of any time period established for the program by statute or regulation for the individual to respond to that notice; or

(ii)

in the case of a program for which no such period is established, the end of the 30-day period beginning on the date on which notice under subparagraph (B) is mailed or otherwise provided to the individual.

(2) Independent verification referred to in paragraph (1) requires investigation and confirmation of specific information relating to an <u>individual</u> that is used as a basis for an adverse action against the <u>individual</u>, including where applicable investigation and confirmation of—

(A)

the amount of any asset or income involved;

(B)

whether such <u>individual</u> actually has or had access to such asset or income for such <u>individual</u>'s own use; and

(C)

the period or periods when the <u>individual</u> actually had such asset or income.

(3)

Notwithstanding paragraph (1), an <u>agency</u> may take any appropriate action otherwise prohibited by such paragraph if the <u>agency</u> determines that the public health or public safety may be adversely affected or significantly threatened during any notice period required by such paragraph.

(q) Sanctions.—

(1)

Notwithstanding any other provision of law, no <u>source agency</u> may disclose any <u>record</u> which is contained in a <u>system of records</u> to a <u>recipient agency</u> or <u>non-Federal agency</u> for a <u>matching program</u> if such <u>source agency</u> has reason to believe that the requirements of subsection (p), or any matching agreement entered into pursuant to subsection (o), or both, are not being met by such <u>recipient agency.</u>

(2) No <u>source agency</u> may renew a matching agreement unless—

(A)

the <u>recipient agency</u> or <u>non-Federal agency</u> has certified that it has complied with the provisions of that agreement; and

(B)

the <u>source agency</u> has no reason to believe that the certification is inaccurate.

(r) Report on New Systems and Matching Programs.—

Each <u>agency</u> that proposes to establish or make a significant change in a <u>system of records</u> or a <u>matching program</u> shall provide adequate advance notice of any such proposal (in duplicate) to the Committee on Government Operations of the House of Representatives, the Committee on Governmental Affairs of the Senate, and the Office of Management and Budget in <u>order</u> to permit an evaluation of the probable or potential effect of such proposal on the privacy or other rights of <u>individuals.</u>

(s) Biennial Report.—The President shall biennially submit to the Speaker of the House of Representatives and the President pro tempore of the Senate a report—

(1)

describing the actions of the Director of the Office of Management and Budget pursuant to section 6 of the <u>Privacy Act of 1974</u> during the preceding 2 years;

(2)

describing the exercise of <u>individual</u> rights of access and amendment under this section during such years;

(3)

identifying changes in or additions to systems of <u>records</u>;

(4)

containing such other information concerning administration of this section as may be necessary or useful to the Congress in reviewing the effectiveness of this section in carrying out the purposes of the Privacy Act of 1974.

(t)

(1) Effect of Other Laws.—

No agency shall rely on any exemption contained in section 552 of this title to withhold from an individual any record which is otherwise accessible to such individual under the provisions of this section.

(2)

No agency shall rely on any exemption in this section to withhold from an individual any record which is otherwise accessible to such individual under the provisions of section 552 of this title.

(u) Data Integrity Boards.—

(1)

Every agency conducting or participating in a matching program shall establish a Data Integrity Board to oversee and coordinate among the various components of such agency the agency's implementation of this section.

(2)

Each Data Integrity Board shall consist of senior officials designated by the head of the agency, and shall include any senior official designated by the head of the agency as responsible for implementation of this section, and the inspector general of the agency, if any. The inspector general shall not serve as chairman of the Data Integrity Board.

(3) Each Data Integrity Board—

(A)

shall review, approve, and maintain all written agreements for receipt or disclosure of agency records for matching programs to ensure compliance with subsection (o), and all relevant statutes, regulations, and guidelines;

(B)

shall review all matching programs in which the agency has participated during the year, either as a source agency or recipient agency, determine compliance with applicable laws, regulations, guidelines, and agency agreements, and assess the costs and benefits of such programs;

(C)

shall review all recurring matching programs in which the agency has participated during the year, either as a source agency or recipient agency, for continued justification for such disclosures;

(D) shall compile an annual report, which shall be submitted to the head of the agency and the Office of Management and Budget and made available to the public on request, describing the matching activities of the agency, including—

(i)

matching programs in which the agency has participated as a source agency or recipient agency;

(ii)

matching agreements proposed under subsection (o) that were disapproved by the Board;

(iii)

any changes in membership or structure of the Board in the preceding year;

(iv)

the reasons for any waiver of the requirement in paragraph (4) of this section for completion and submission of a cost-benefit analysis prior to the approval of a matching program;

(v)

any violations of matching agreements that have been alleged or identified and any corrective action taken; and

(vi)

any other information required by the Director of the Office of Management and Budget to be included in such report;

(E)

shall serve as a clearinghouse for receiving and providing information on the accuracy, completeness, and reliability of records used in matching programs;

(F)

shall provide interpretation and guidance to agency components and personnel on the requirements of this section for matching programs;

(G)

shall review agency recordkeeping and disposal policies and practices for matching programs to assure compliance with this section; and

(H)

may review and report on any agency matching activities that are not matching programs.

(4)

(A)

Except as provided in subparagraphs (B) and (C), a Data Integrity Board shall not approve any written agreement for a matching program unless the agency has completed and submitted to such Board a cost-benefit analysis of the proposed program and such analysis demonstrates that the program is likely to be cost effective.[2]

(B)

The Board may waive the requirements of subparagraph (A) of this paragraph if it determines in writing, in accordance with guidelines prescribed by the Director of the Office of Management and Budget, that a cost-benefit analysis is not required.

(C)

A cost-benefit analysis shall not be required under subparagraph (A) prior to the initial approval of a written agreement for a matching program that is specifically required by statute. Any subsequent written agreement for such a program shall not be approved by the Data Integrity Board unless the agency has submitted a cost-benefit analysis of the program as conducted under the preceding approval of such agreement.

(5)

(A)

If a matching agreement is disapproved by a Data Integrity Board, any party to such agreement may appeal the disapproval to the Director of the Office of Management and Budget. Timely notice of the filing of such an appeal shall be provided by the Director of the Office of Management and Budget to the Committee on Governmental Affairs of the Senate and the Committee on Government Operations of the House of Representatives.

(B) The Director of the Office of Management and Budget may approve a matching agreement notwithstanding the disapproval of a Data Integrity Board if the Director determines that—

(i)

the matching program will be consistent with all applicable legal, regulatory, and policy requirements;

(ii)

there is adequate evidence that the matching agreement will be cost-effective; and
(iii)
the matching program is in the public interest.
(C)
The decision of the Director to approve a matching agreement shall not take effect until 30 days after it is reported to committees described in subparagraph (A).
(D)
If the Data Integrity Board and the Director of the Office of Management and Budget disapprove a matching program proposed by the inspector general of an agency, the inspector general may report the disapproval to the head of the agency and to the Congress.
(6)
In the reports required by paragraph (3)(D), agency matching activities that are not matching programs may be reported on an aggregate basis, if and to the extent necessary to protect ongoing law enforcement or counterintelligence investigations.
(v) Office of Management and Budget Responsibilities.—The Director of the Office of Management and Budget shall—
(1)
develop and, after notice and opportunity for public comment, prescribe guidelines and regulations for the use of agencies in implementing the provisions of this section; and
(2)
provide continuing assistance to and oversight of the implementation of this section by agencies.
(w) Applicability to Bureau of Consumer Financial Protection.—
Except as provided in the Consumer Financial Protection Act of 2010, this section shall apply with respect to the Bureau of Consumer Financial Protection.
(Added Pub. L. 93–579, § 3, Dec. 31, 1974, 88 Stat. 1897; amended Pub. L. 94–183, § 2(2), Dec. 31, 1975, 89 Stat. 1057; Pub. L. 97–365, § 2, Oct. 25, 1982, 96 Stat. 1749; Pub. L. 97–375, title II, § 201(a), (b), Dec. 21, 1982, 96 Stat. 1821; Pub. L. 97–452, § 2(a)(1), Jan. 12, 1983, 96 Stat. 2478; Pub. L. 98–477, § 2(c), Oct. 15, 1984, 98 Stat. 2211; Pub. L. 98–497, title I, § 107(g), Oct. 19, 1984, 98 Stat. 2292; Pub. L. 100–503, §§ 2–6(a), 7, 8, Oct. 18, 1988, 102 Stat. 2507–2514; Pub. L. 101–508, title VII, § 7201(b)(1), Nov. 5, 1990, 104 Stat. 1388–334; Pub. L. 103–66, title XIII, § 13581(c), Aug. 10, 1993, 107 Stat. 611; Pub. L. 104–193, title I, § 110(w), Aug. 22, 1996, 110 Stat. 2175; Pub. L. 104–226, § 1(b)(3), Oct. 2, 1996, 110 Stat. 3033; Pub. L. 104–316, title I, § 115(g)(2)(B), Oct. 19, 1996, 110 Stat. 3835; Pub. L. 105–34, title X, § 1026(b)(2), Aug. 5, 1997, 111 Stat. 925; Pub. L. 105–362, title XIII, § 1301(d), Nov. 10, 1998, 112 Stat. 3293; Pub. L. 106–170, title IV, § 402(a)(2), Dec. 17, 1999, 113 Stat. 1908; Pub. L. 108–271, § 8(b), July 7, 2004, 118 Stat. 814; Pub. L. 111–148, title VI, § 6402(b)(2), Mar. 23, 2010, 124 Stat. 756; Pub. L. 111–203, title X, § 1082, July 21, 2010, 124 Stat. 2080; Pub. L. 113–295, div. B, title I, § 102(d), Dec. 19, 2014, 128 Stat. 4062.)

# 18 U.S. Code § 2261 - Interstate domestic violence

(a) Offenses.—

(1) Travel or conduct of offender.—

A person who travels in interstate or foreign commerce or enters or leaves Indian country or is present within the special maritime and territorial jurisdiction of the United States with the intent to kill, injure, harass, or intimidate a spouse, intimate partner, or dating partner, and who, in the course of or as a result of such travel or presence, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner, shall be punished as provided in subsection (b).

(2) Causing travel of victim.—

A person who causes a spouse, intimate partner, or dating partner to travel in interstate or foreign commerce or to enter or leave Indian country by force, coercion, duress, or fraud, and who, in the course of, as a result of, or to facilitate such conduct or travel, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner, shall be punished as provided in subsection (b).

(b) Penalties.—A person who violates this section or section 2261A shall be fined under this title, imprisoned—

(1)

for life or any term of years, if death of the victim results;

(2)

for not more than 20 years if permanent disfigurement or life threatening bodily injury to the victim results;

(3)

for not more than 10 years, if serious bodily injury to the victim results or if the offender uses a dangerous weapon during the offense;

(4)

as provided for the applicable conduct under chapter 109A if the offense would constitute an offense under chapter 109A (without regard to whether the offense was committed in the special maritime and territorial jurisdiction of the United States or in a Federal prison); and

(5)

for not more than 5 years, in any other case,

or both fined and imprisoned.

(6)

Whoever commits the crime of stalking in violation of a temporary or permanent civil or criminal injunction, restraining order, no-contact order, or other order described in section 2266 of title 18, United States Code, shall be punished by imprisonment for not less than 1 year.

# 18 U.S. Code § 875 - Interstate communications

(a)

Whoever transmits in interstate or foreign commerce any communication containing any demand or request for a ransom or reward for the release of any kidnapped person, shall be fined under this title or imprisoned not more than twenty years, or both.

(b)

Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than twenty years, or both.

(c)

Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

(d)

Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.

# 18 U.S. Code § 1030 - Fraud and related activity in connection with computers

## (a) Whoever—

## (1)

**having knowingly** accessed a computer without authorization or exceeding authorized access, and by means of such conduct having obtained information that has been determined by the United States Government pursuant to an Executive order or statute to require protection against unauthorized disclosure for reasons of national defense or foreign relations, or any restricted data, as defined in paragraph y. of section 11 of the Atomic Energy Act of 1954, with reason to believe that such information so obtained could be used to the injury of the United States, or to the advantage of any foreign nation willfully communicates, delivers, transmits, or causes to be communicated, delivered, or transmitted, or attempts to communicate, deliver, transmit or cause to be communicated, delivered, or transmitted the same to any person not entitled to receive it, or willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it;

(2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains—

(A)

information contained in a financial record of a financial institution, or of a card issuer as defined in section 1602(n) [1] of title 15, or contained in a file of a consumer reporting agency on a consumer, as such terms are defined in the Fair Credit Reporting Act (15 U.S.C. 1681 et seq.);

(B)

information from any department or agency of the United States; or

(C)

information from any protected computer;

(3)

intentionally, without authorization to access any nonpublic computer of a department or agency of the United States, accesses such a computer of that department or agency that is exclusively for the use of the Government of the United States or, in the case of a computer not exclusively for such use, is used by or for the Government of the United States and such conduct affects that use by or for the Government of the United States;

(4)

knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period;

(5)

(A)

knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

(B)

intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or

(C)

intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.[2]

(6) knowingly and with intent to defraud traffics (as defined in section 1029) in any password or similar information through which a computer may be accessed without authorization, if—

(A)

such trafficking affects interstate or foreign commerce; or

(B)

such computer is used by or for the Government of the United States; [3]

(7) with intent to extort from any person any money or other thing of value, transmits in interstate or foreign commerce any communication containing any— WHICH THE CHEYENNE WY POLICE, PHOENIX POLICE, CHANDLER/MESA/TEMPE/SPRINGFIELD, IL POLICE, CHICAGO POLICE ARE DOING AND HAVE DONE IN THE ONGOING EXTORTION CONSPIRACY AGAINST KAROL MAGISTRELLI AND HER DAUGHTERS WITH NANCY PELOSI, DONALD TRUMP, IVANLA

TRUMP WHATSHERNAMETODAY, JARED KUSHNERS, ZACHARY AND BRUCE AND SHEILA FARDON 3 MISFITS FROM HELL, MICHELLE AND BARACK OBAMA AND THEIR EQUILLY DIRTY ADOPTED BRATS MALIA AND SASHA AND HER HIT MEN ROUND THE CLOCK, BRIBING BANKERS NATIONWIDE IN MULTIPLE BANKS, THOUSANDS HIRED TO STALK A FELONY, ALL DONE KNOWINGLY.

(A)

threat to cause damage to a protected computer;

(B)

threat to obtain information from a protected computer without authorization or in excess of authorization or to impair the confidentiality of information obtained from a protected computer without authorization or by exceeding authorized access; or

(C)

demand or request for money or other thing of value in relation to damage to a protected computer, where such damage was caused to facilitate the extortion;

shall be punished as provided in subsection (c) of this section.

(b)

Whoever conspires to commit or attempts to commit an offense under subsection (a) of this section shall be punished as provided in subsection (c) of this section.

(c) The punishment for an offense under subsection (a) or (b) of this section is—

(1)

(A)

a fine under this title or **imprisonment for not more than ten years, or both, in the case of an offense under subsection (a)(1) of this section which does not occur after a conviction for another offense under this section, or an attempt to commit an offense punishable under this subparagraph; and ADD ALL THE ENHANCEMENTS OF TREASON, RACKETEERING AND GIVE THEM LIFE;.**

(B)

**a fine under this title or imprisonment for not more than twenty years, or both, in the case of an offense under subsection (a)(1) of this section which occurs**

# after a <u>conviction</u> for another offense under this section, or an attempt to commit an offense punishable under this subparagraph;

(2)

(A)

except as provided in subparagraph (B), a fine under this title or imprisonment for not more than one year, or both, in the case of an offense under subsection (a)(2), (a)(3), or (a)(6) of this section which does not occur after a <u>conviction</u> for another offense under this section, or an attempt to commit an offense punishable under this subparagraph;

(B) a fine under this title or imprisonment for not more than 5 years, or both, in the case of an offense under subsection (a)(2), or an attempt to commit an offense punishable under this subparagraph, if—

(i)

the offense was committed for purposes of commercial advantage or private financial gain;

(ii)

the offense was committed in furtherance of any criminal or tortious act in violation of the Constitution or laws of the United <u>States</u> or of any <u>State</u>; or

(iii)

the value of the information obtained exceeds $5,000; and

(C)

a fine under this title or imprisonment for not more than ten years, or both, in the case of an offense under subsection (a)(2), (a)(3) or (a)(6) of this section which occurs after a <u>conviction</u> for another offense under this section, or an attempt to commit an offense punishable under this subparagraph;

(3)

(A)

a fine under this title or imprisonment for not more than five years, or both, in the case of an offense under subsection (a)(4) or (a)(7) of this section which does not occur after a <u>conviction</u> for another offense under this section, or an attempt to commit an offense punishable under this subparagraph; and

(B)

a fine under this title or imprisonment for not more than ten years, or both, in the case of an offense under subsection (a)(4),[4] or (a)(7) of this section which occurs after a <u>conviction</u> for another offense under this section, or an attempt to commit an offense punishable under this subparagraph;

(4)

(A) except as provided in subparagraphs (E) and (F), a fine under this title, imprisonment for not more than 5 years, or both, in the case of—

(i) an offense under subsection (a)(5)(B), which does not occur after a <u>conviction</u> for another offense under this section, if the offense caused (or, in the case of an attempted offense, would, if completed, have caused)—

(I)

<u>loss</u> to 1 or more <u>persons</u> during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United <u>States</u> only, <u>loss</u> resulting from a related

course of conduct affecting 1 or more other <u>protected computers</u>) aggregating at least $5,000 in value;

(II)

the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;

(III)

physical injury to any <u>person</u>;

(IV)

a threat to public health or safety;

(V)

**<u>damage</u> affecting a <u>computer</u> used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security; or**

**(VI)**

**<u>damage</u> affecting 10 or more <u>protected computers</u> during any 1-year period; or**

**(ii)**

an attempt to commit an offense punishable under this subparagraph;

(B) except as provided in subparagraphs (E) and (F), a fine under this title, imprisonment for not more than 10 years, or both, in the case of—

(i)

an offense under subsection (a)(5)(A), which does not occur after a <u>conviction</u> for another offense under this section, if the offense caused (or, in the case of an attempted offense, would, if completed, have caused) a harm provided in subclauses (I) through (VI) of subparagraph (A)(i); or

(ii)

an attempt to commit an offense punishable under this subparagraph;

(C) except as provided in subparagraphs (E) and (F), a fine under this title, imprisonment for not more than 20 years, or both, in the case of—

(i)

an offense or an attempt to commit an offense under subparagraphs (A) or (B) of subsection (a)(5) that occurs after a <u>conviction</u> for another offense under this section; or

(ii)

an attempt to commit an offense punishable under this subparagraph;

(D) a fine under this title, imprisonment for not more than 10 years, or both, in the case of—

(i)

an offense or an attempt to commit an offense under subsection (a)(5)(C) that occurs after a <u>conviction</u> for another offense under this section; or

(ii)

an attempt to commit an offense punishable under this subparagraph;

(E)

if the offender attempts to cause or knowingly or recklessly causes serious bodily injury from conduct in violation of subsection (a)(5)(A), a fine under this title, imprisonment for not more than 20 years, or both; LIKE THE SERIOUS MENTAL INJURIES CAUSING MY DAUGHTERS TO BE TEN YEARS OLD IN 27 YEAR OLD BODIES ANT THESE SATANIC POLICE ARE HIDING THEM FOR BRIBES AND THEY SHOULD BE CASTRATED AND THROWN INTO THE GENERAL POPULATION.

(F)

**if the offender attempts to cause or knowingly or recklessly causes death from conduct in violation of subsection (a)(5)(A), a fine under this title, imprisonment for any term of years or for life, or both; or BOTH ARE DYING DUE TO POLICE MALFEASANCE AND CONTRACTS WITH THE ORANGE JESUS DONALD SATANIC TRUMP AND WHEN THEY DIE THE POLICE NATIONWIDE ARE GUILTY OF MURDER IN THE FIRST DEGREE ENABLED BY THE MOST CORRUPT COCAINE ADDICTED JUDGES IN THE COUNTRY.**

**(G) a fine under this title, imprisonment for not more than 1 year, or both, for—**

**(i)**

any other offense under subsection (a)(5); or

(ii)

an attempt to commit an offense punishable under this subparagraph.

(d)

(1)

The United States Secret Service shall, in addition to any other agency having such authority, have the authority to investigate offenses under this section.

(2)

The Federal Bureau of Investigation shall have primary authority to investigate offenses under subsection (a)(1) for any cases involving espionage, foreign counterintelligence, information protected against unauthorized disclosure for reasons of national defense or foreign relations, or Restricted Data (as that term is defined in section 11y of the Atomic Energy Act of 1954 (42 U.S.C. 2014(y)), except for offenses affecting the duties of the United States Secret Service pursuant to section 3056(a) of this title.

(3)

Such authority shall be exercised in accordance with an agreement which shall be entered into by the Secretary of the Treasury and the Attorney General.

(e) As used in this section—

(1)

the term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device;

(2) the term "protected computer" means a computer—

(A)

exclusively for the use of a financial institution or the United States Government, or, in the case of a computer not exclusively for such use, used by or for a financial institution or the United States Government and the conduct constituting the offense affects that use by or for the financial institution or the Government;

(B)

which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States; or

(C) that—

(i)

is part of a voting system; and

(ii)

(I)

is used for the management, support, or administration of a Federal election; or

(II)

has moved in or otherwise affects interstate or foreign commerce;

(3)

the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any other commonwealth, possession or territory of the United States;

(4) the term "financial institution" means—

(A)

an institution, with deposits insured by the Federal Deposit Insurance Corporation;
(B)
the Federal Reserve or a member of the Federal Reserve including any Federal Reserve Bank;
(C)
a credit union with accounts insured by the National Credit Union Administration;
(D)
a member of the Federal home loan bank system and any home loan bank;
(E)
any institution of the Farm Credit System under the Farm Credit Act of 1971;
(F)
a broker-dealer registered with the Securities and Exchange Commission pursuant to section 15 of the Securities Exchange Act of 1934;
(G)
the Securities Investor Protection Corporation;
(H)
a branch or agency of a foreign bank (as such terms are defined in paragraphs (1) and (3) of section 1(b) of the International Banking Act of 1978); and
(I)
an organization operating under section 25 or section 25(a) [1] of the Federal Reserve Act;
(5)
the term "financial record" means information derived from any record held by a financial institution pertaining to a customer's relationship with the financial institution;
(6)
the term "exceeds authorized access" means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter;
(7)
the term "department of the United States" means the legislative or judicial branch of the Government or one of the executive departments enumerated in section 101 of title 5;
(8)
the term "damage" means any impairment to the integrity or availability of data, a program, a system, or information;
(9)
the term "government entity" includes the Government of the United States, any State or political subdivision of the United States, any foreign country, and any state, province, municipality, or other political subdivision of a foreign country;
(10)
the term "conviction" shall include a conviction under the law of any State for a crime punishable by imprisonment for more than 1 year, an element of which is unauthorized access, or exceeding authorized access, to a computer;
(11)
the term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service;
(12)

the term "person" means any individual, firm, corporation, educational institution, financial institution, governmental entity, or legal or other entity;

(13)

the term "Federal election" means any election (as defined in section 301(1) of the Federal Election Campaign Act of 1971 (52 U.S.C. 30101(1))) for Federal office (as defined in section 301(3) of the Federal Election Campaign Act of 1971 (52 U.S.C. 30101(3))); and

(14)

the term "voting system" has the meaning given the term in section 301(b) of the Help America Vote Act of 2002 (52 U.S.C. 21081(b)).

(f)

This section does not prohibit any lawfully authorized investigative, protective, or intelligence activity of a law enforcement agency of the United States, a State, or a political subdivision of a State, or of an intelligence agency of the United States.

(g)

Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses [5] (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

(h)

The Attorney General and the Secretary of the Treasury shall report to the Congress annually, during the first 3 years following the date of the enactment of this subsection, concerning investigations and prosecutions under subsection (a)(5).

(i)

(1) The court, in imposing sentence on any person convicted of a violation of this section, or convicted of conspiracy to violate this section, shall order, in addition to any other sentence imposed and irrespective of any provision of State law, that such person forfeit to the United States—

(A)

such person's interest in any personal property that was used or intended to be used to commit or to facilitate the commission of such violation; and

(B)

any property, real or personal, constituting or derived from, any proceeds that such person obtained, directly or indirectly, as a result of such violation.

(2)

The criminal forfeiture of property under this subsection, any seizure and disposition thereof, and any judicial proceeding in relation thereto, shall be governed by the provisions of section 413 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 853), except subsection (d) of that section.

(j) For purposes of subsection (i), the following shall be subject to forfeiture to the United States and no property right shall exist in them:

(1)

Any personal property used or intended to be used to commit or to facilitate the commission of any violation of this section, or a conspiracy to violate this section.
(2)
Any property, real or personal, which constitutes or is derived from proceeds traceable to any violation of this section, or a conspiracy to violate this section [6]

# 18 U.S. Code § 2071 - Concealment, removal, or mutilation generally

**(a)**
Whoever willfully and unlawfully conceals, removes, mutilates, obliterates, or destroys, or attempts to do so, or, with intent to do so takes and carries away any record, proceeding, map, book, paper, document, or other thing, filed or deposited with any clerk or officer of any court of the United States, or in any public office, or with any judicial or public officer of the United States, shall be fined under this title or imprisoned not more than three years, or both.

**(b)**
Whoever, having the custody of any such record, proceeding, map, book, document, paper, or other thing, willfully and unlawfully conceals, removes, mutilates, obliterates, falsifies, or destroys the same, shall be fined under this title or imprisoned not more than three years, or both; and shall forfeit his office and be disqualified from holding any office under the United States. As used in this subsection, the term "office" does not include the office held by any person as a retired officer of the Armed Forces of the United States.

(June 25, 1948, ch. 645, 62 Stat. 795; Pub. L. 101–510, div. A, title V, § 552(a), Nov. 5, 1990, 104 Stat. 1566; Pub. L. 103–322, title XXXIII, § 330016(1)(I), Sept. 13, 1994, 108 Stat. 2147.)

JUDGE ZAGEL AND THE USDOJ IN CHICAGO UNDER USELESS ATTORNEY ZACHARY FARDON SHREDDED OVER 60,000 PAGES AND JUDGES NEFF, CARMODY, MURKOWSKI, SNOW AND ZAGEL SHRED DAILY.

# 31 U.S. Code § 3729 - False claims

(a) Liability for Certain Acts.—
(1) In general.—Subject to paragraph (2), any person who—
(A)
**knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; THIS INCLUDES EVERY JUDGE ON THIS CASE AND CONGRESS, FOUR PRESIDENTS AND MORE.**
(B)
knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
(C)

conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);
(D)
has possession, custody, or control of property or money used, or to be used, by the Government
and knowingly delivers, or causes to be delivered, less than all of that money or property;
(E)
is authorized to make or deliver a document certifying receipt of property used, or to be used, by
the Government and, intending to defraud the Government, makes or delivers the receipt without
completely knowing that the information on the receipt is true;
(F)
knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer
or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or
pledge property; or
(G)
knowingly makes, uses, or causes to be made or used, a false record or statement material to an
obligation to pay or transmit money or property to the Government, or knowingly conceals or
knowingly and improperly avoids or decreases an obligation to pay or transmit money or
property to the Government,
is liable to the United States Government for a civil penalty of not less than $5,000 and not more
than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28
U.S.C. 2461 note; Public Law 104–410 [1]), plus 3 times the amount of damages which the
Government sustains because of the act of that person.
(2) Reduced damages.—If the court finds that—
(A)
the person committing the violation of this subsection furnished officials of the United States
responsible for investigating false claims violations with all information known to such person
about the violation within 30 days after the date on which the defendant first obtained the
information;
(B)
such person fully cooperated with any Government investigation of such violation; and
(C)
at the time such person furnished the United States with the information about the violation, no
criminal prosecution, civil action, or administrative action had commenced under this title with
respect to such violation, and the person did not have actual knowledge of the existence of an
investigation into such violation,
the court may assess not less than 2 times the amount of damages which the Government sustains
because of the act of that person.
(3) Costs of civil actions.—
A person violating this subsection shall also be liable to the United States Government for the
costs of a civil action brought to recover any such penalty or damages.
(b) Definitions.—For purposes of this section—
**(1) the terms "knowing" and "knowingly"—**
**(A) mean that a person, with respect to information—**
**(i)**
**has actual knowledge of the information;**
**(ii)**

**acts in deliberate ignorance of the truth or falsity of the information; or**
**(iii)**
**acts in reckless disregard of the truth or falsity of the information; and**
(B)
require no proof of specific intent to defraud;
(2) the term "claim"—
(A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—
(i)
is presented to an officer, employee, or agent of the United States; or
(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—
(I)
provides or has provided any portion of the money or property requested or demanded; or
(II)
will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; and
(B)
does not include requests or demands for money or property that the Government has paid to an individual as compensation for Federal employment or as an income subsidy with no restrictions on that individual's use of the money or property;
(3)
the term "obligation" means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment; and
(4)
the term "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.
(c) Exemption From Disclosure.—
Any information furnished pursuant to subsection (a)(2) shall be exempt from disclosure under section 552 of title 5.
(d) Exclusion.—
This section does not apply to claims, records, or statements made under the Internal Revenue Code of 1986.

# 26 U.S. Code § 7402 - Jurisdiction of district courts

(a) To issue orders, processes, and judgments

The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of ne exeat republica, orders appointing receivers, and such other orders and processes, and to render such

judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws.

(b) To enforce summons

If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.

(c) For damages to United States officers or employees

Any officer or employee of the United States acting under authority of this title, or any person acting under or by authority of any such officer or employee, **receiving any injury to his person or property in the discharge of his duty shall be entitled to maintain an action for damages therefor, in the district court of the United States, in the district wherein the party doing the injury may reside or shall be found.**

[(d) Repealed. Pub. L. 92–310, title II, § 230(d), June 6, 1972, 86 Stat. 209]
(e) To quiet title

**The United States district courts shall have jurisdiction of any action brought by the United States to quiet title to property if the title claimed by the United States to such property was derived from enforcement of a lien under this title.  THAT KAROL HAS TWO HOMES WITH FRAUDULENT LEINS ONE MADE INTO A NATION UNDER THE UNITED NATIONS IN GILBERTS ILL WITH THE GILBERTS POLICE BREAKING INTO HER TOWNHOME AND PUTTING A THUG CALLED RODNEY RAY HECKLER IN THE DUCT WORK TO LIVE THERE STALKING KAROL 24/7 LIKE THE PEDOPHILE PERVERT HE AND THEY ARE.**

**ALL LEINS SHOULD BE VACATED AS THEY WERE RETALIATORY AGAINST KAROL MAGISTRELLI AND HER DAUGHTERS FOR REPORTING THESES JUDGES FOR THEIR SECRET PLAN TO TAKE OVER THE UNITED STATES OF AMERICA WITH BARACK AND TRANNY MICHELLE OBAMA, GEORGE BUSH, THE BIDEN ADMINISTRATION, NANCY PELOSI WHO OWNS THOUSANDS OF BROTHELS PUTING MY DAMAGED DAUGHTERS INTO THEM AND SO HELP ME**

GOD STAY AWAY FROM ME AND MY DAUGHTERS BITCH. YOU DESERVE TO BE IN PRISON.

JOE BIDEN IS HACKING MY COMPUTER RIGHT NOW THE WAY IM TOLD October 7, 2022.  GET THE HELL OFF.

THAT THE COURT HAS JURISDICTION OF ALL MONEY LAUNDERED ILLEGALLY ALL OVER THE WORLD BY ALL OF CONGRESS, POLICE, JUDGES, THE TRUMP MOB, THE OBAMA MOB, THE BIDEN MOB AND THE GEORGE BUSH MOB, AND MORE ALL OVER THE WORLD,  SINCE APRIL 15, 2009, BY THE 19TH JUDUCIAL COURT IN WAUKEGAN ILL WHO ALL RACKETEEED WITH THESE JUDGES AND MORE NATIONWIDE TO COVER UP FOR EQUITY REAL ESTATE CONSULTANTS WHO THEY FORMED TO TAKE OVER THE UNITED STATES OF AMERICA WITH BARACK OBAMA THE ILLEGAL ALIEN WHO SHOULD BE IN PRISON FOR IMPERSONATION AND DEATH THREATS AND BLUDGEONING OF TWO INNOCENT CHILDREN SO BACK THE HELL OFF OBAMA MOB.  YOU CAN MURDER BUT YOU **CANNOT REMOVE THIS SUIT THAT OVER ONE THOUSAND ARE HACKING RIGHT NOW WATCHING YOU HIRE HIT MEN FROM ISIS DAILY.**

(f) General jurisdiction

For general jurisdiction of the district courts of the United States in civil actions involving internal revenue, see section 1340 of title 28 of the United States Code.

(Aug. 16, 1954, ch. 736, 68A Stat. 873; Pub. L. 89–719, title I, § 107(a), Nov. 2, 1966, 80 Stat. 1140; Pub. L. 93–310, title II, § 230(d), June 6, 1972, 86 Stat. 209.)

# Workplace Conduct in the Federal Judiciary

The federal Judiciary is committed to a workplace free from discrimination, sexual or other **_discriminatory harassment, and abusive conduct_**. It is also committed to ensuring that every employee has clear avenues to obtain confidential advice, report misconduct, and seek and receive remedial action.

## Avenues for Reporting & Advice

Current and former Judiciary employees, and interviewed applicants for positions within the Judciary, have multiple avenues available to them, both inside and outside of their employing court, to seek support and guidance regarding workplace conduct concerns. Points of contact at the national, circuit, and local court levels can all provide confidential advice and will explain

the resources and options available, including how to request an assisted resolution or how to file a formal complaint under a court's Employment Dispute Resolution Plan (EDR) or under the Judicial Conduct & Disability Act. Employees are free to contact whomever they feel most comfortable.

# Reporting Workplace Harassment & Other Wrongful Conduct

Report unwelcome harassment and other wrongful conduct as soon as possible, before it becomes severe or pervasive, so that the misconduct can be corrected immediately and further harassment can be prevented.

Anyone wishing to withhold their name or other personally identifiable information can do so by simply stating that request when calling and/or by using an email account that does not include this information when emailing.

### National Office of Judicial Integrity

The national Office of Judicial Integrity (OJI) serves as an independent resource outside of the courts' chain of command, providing confidential help, information, and referral, answering questions and providing guidance on informal and formal complaint options for addressing workplace harassment, abusive conduct, or other wrongful conduct. The office also coordinates with the directors of workplace relations in each of the U.S. Circuit Courts of Appeals. The Judicial Integrity Officer and head of the office is Michael Henry. Confidentially report by:

- Calling 202-502-1603
- Emailing AO_OJI@ao.uscourts.gov (link sends e-mail)  EMAIL SENT ON OCTOBER 7, 2022

VERIFICATION:

PURSUANT TO LAWS OF PERJURY IN 18 USC 2216 THE UNDERSIGNED CERTIFIES THAT THE STATEMENTS ARE TRUE TO THE BEST OF HER KNOWLEDGE.

*[signature]* 10 17 - 22

**KAROL D. MAGISTRELLI**

**1421 Lincolnway**

**Cheyenne, Wyoming 82001**

**307-632-3174**

State of: Wyoming
County of: Laramie
The foregoing instrument was acknowledged before me 17th day of November, 2022

_____, Notary Public

My Commission Expires: 09/24/2024

Kimberly J. Storey
County of Laramie
My Commission Expires September 24, 2024
State of Wyoming
Notary Public

Page 48 of 48