FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

NOV 28 2022

Margaret Botkins, Clerk
Cheyenne

NOTICE of CRIMINAL Forfeiture
to Every Defendant, 18 USC §982
8 USC § 1324
18 USC 981 –
Controlled Substances Act

KARNL MAGISTRELLI
and on Behalf of
her daughters
REBEKAH Ruth MAGISTRELLI Lynn
RAChel ElizaBeth MAGISTRELLI

Plaintiffs

VS

Ivanka Trump KASHMAN    } HIRING hundreds of
Michelle OBAMA          } ENTERTAINERS.
KAMALA ANRIS            }
BARON Trump
Melania Trump
Donald Trump
Biden Administration,
USDOJ, DOD, Homeland Secy Attorneys.

Defendants

Notice of Criminal Forfeiture was
blocked from being
downloaded to Karols
flash drive by multiple
smekers hired by Trump
today 9-29-22

Forfeitable Property under
18 USC 981

all The Bribe payers: Donald Trump,
Kamala Harris, Nancy Pelosi,
Jared Kushners, Congressional Reps,
Ivanka Trump Kashimer, the CA, UT,
FL, MI, NV, NE, AZ, NM NC SC
MI Supreme Court Justices & more
all snort Free based cocaine,
and its Treason.

① Defendents Embarcing —

Jennifer Lopez
Ben Affleck
Cheers Show And All Actors
Friends Show "
The Jeffersons
The Kardashians
The Bachelorette
Naked in the Wilderness?

Katie Perry
Jay Z
Steve Harvey
Anderson Cooper & mom    Gloria Vanderbilt.
Carrie Underwood
Kate Middleton
Simon Cowel.
Alec Baldwin
Leonardo D'Caprio
Kate Winslet
Lady Gaga
Cyndi Lauper

Notice of Criminal Forfeiture
18 USC § 982 and 8 USC § 1324

Between the time that Karol wrote
the above and today 9-20-22 its
been approximately two weeks and
Michelle Obama has already
tampered with the Asset Forfeiture
laws so that she and Barack
wont have to forfeit anything and
almost everything she has is
stolen — mostly from Karol
Magisnelli's Judgment Fund of
1.4 Billion then another Due Than
fuled in bad faith by the
attorneys with the Federal
Trade Commission who either
split up another ⅓ Billion or
gave it to Barack Obama for
purposes of the new World
Order schemes.
(Exhibit A)

TABLE of AUTHORITIES Continued

Bell Atlantic vs Twombly

Consumer Legal Remedies Act
CLRA §1750 et. seq,
Malice, Fraud, oppression &
Terrorization
(America Online V. Superior Court

a Cause of Action - Seeks Class
action:
- authorizes permanent injunctive
relief to to enjoin deceptive
practices

Biomedical v. Nunez

18 USC  874, 872  1519  1001  1961-1968
1111, 1112, Solicitation of murder 3000 x
violating he oaths
1509, 1988, 1985, 1964, 242, 241,
1512, 1513, Cruel & unusual
Punishment,
Hate Crimes

981 Civil Forfeiture for All holdings used
to perment a Take over by money
laundering kaos Judgment Fund etc

THIS IS IC3 COMPLAINT REFERRAL FILES FROM THE FBI WEBSITTE FOR IC3 THAT KAROL MAGISTRELLI WROTE AND COPIED BUT THE POLICE BREAK IT DOWN LIKE THIS SO THAT IT IS ILLEGABLE AND CANNOT BE READ THE WAY KAROL MAGISTRELLI WROTE IT.

September 20, 2022 THIS WAS COPIED BUT IT WAS WRITTEN TO IC3 SOMETIME IN AUGUST OF 2022.

saved_resource(1).html   saved_resource.html   site.css   site.js.download   styles__ltr.css

Universal-Federated-Analytics-Min.js.download   analytics.js.download   anchor.html

api.js.download   bframe.html   customvalidate.js.download   jquery.min.js.download

jquery.validate.min.js.download   jquery.validate.unobtrusive.min.js.download

recaptcha__en.js.download

The Police are trying to ruin every Complaint Karol put in as they dont want to be caught for decades of bribes & Tax Evasion – money laundering overseas etc,

https://www.google.com/search?client=firefox-b-1-
d&q=asset+forfeiture+laws+federal

What is a key difference between the two types of forfeiture laws?
In civil forfeiture, a criminal charge or conviction is not needed; the
government only needs to show by a preponderance of the evidence that the
property was used to facilitate a crime. In theory, criminal forfeiture is a
punishment, while civil forfeiture is remedial. Most forfeiture actions are civil.

What is the difference between civil and criminal forfeiture?

Forfeiture is the government seizure of property connected to criminal
activity. In criminal forfeiture, the government takes property after obtaining
a conviction, as part of the defendant's sentence. In civil forfeiture, a criminal
charge or conviction is not needed; the government only needs to show by a
preponderance of the evidence that the property was used to facilitate a crime.
In theory, criminal forfeiture is a punishment, while civil forfeiture is
remedial. Most forfeiture actions are civil.

THE PREPONDERANCE OF EVIDENCE IS CLEARLY SEEN AS THE
USDOJ AND HOMELAND SECURITY ARE FOLLOWING EVERY
MOVE THESE GREEDY REPRESENTATIVES ARE DOING,
INCLUDING THE CONSTANT SHREDDING THE DAY AFTER BILKING
PEOPLE AND COMPANIES AND COUNTRIES OF MILLIONS OF
DOLLARS FOR PERSONAL GAIN AND ENRICHMENT THAT THEY
FULLY INTEND TO USE TO TAKE OVER THE UNITED STATES AND
THAT IS TREASON AND CRIMINAL.

100% OF THE TRUMP MOB, THE ZACHARY FARDON MOB, THE JOE
BIDEN MOB, THE NANCY AND PAUL PELOSI MOB, THE KAMALA
HARRIS MOB AND ADMINISTRATIONS, THE IVANLA KASHIMER
MOB AND HER ADMINISTRATIONS WITH JARED KUSHNERS HER
TWICE DIVORCED EX HUSBAND AND ALL HIS FRAUDULENT

WEBSITES, SSA AND SSI THEFTS NATIONWIDE AND KUSHNERS LAWN AND GARDEN LTD THAT HE USES TO LAUNDER MILLIONS TO VLADIMIR PUTINS COUNTRY ALL OVER RUSSIA AS WELL AS THE BRIBES THAT THE TRUMP MOB PAID TO VLADIMIR PUTIN WITH KAROL MAGISTRELLI'S MONEY.  THAT IS CRIMINAL AND 100% OF DONALD TRUMPS HOLDINGS, MONEY, FOREIGN AND DOMESTIC NEED TO BE FORFEITED BEFORE HE IS SENTENCE TO LIFE IN PRISON FOR TREASON AND THE 1200 PLUS HIT MEN HE HIRED FOR KAROL MAGISTRELLI AND HER DAUGHTERS.

HE NEEDS TO LET LINDA GO THAT HE USES TO BLOCK KAROLS INTERNET ETC AS HE IS USING A DISABLED PERSON AND SHE CANNNOT POSSIBLE UNDERSTAND THE EVIL BEHIND TRUMP AND HIS RELENTLESS LIES AND THEFTS OF BANKS OF THE AMERICAN PEOPLE.


This case used KAROL MAGISTRELLI'S MOTIONS AND QUI TAMS THAT SHE TYPED ON HER CELL PHONE AND ON THIS LIBRARY COMPUTER THAT IVANLA TRUMP KASHIMER TWICE DIVORCED AND TWICE CONVICTED PUBLICLY WITH HUNDREDS OF FELONIES HIDDEN UNDER THE TABLE BY BRIBED ATTORNEYS, JUDGES AND SUPREME COURTS, AND JARED KUSHNERS, ZACHARY –SHEILA AND BRUCE FARDON WHO FILED THEM WITH CONGRESS AS THEIR OWN WHEN THEY WERE NEVER MARRIED TO GARY MAGISTRELLI AND COULDN'T WRITE THEIR OWN DIARY'S DUE TO STUPIDITY AND FRAUD UPON THE COURT AS IT WOULD BRING UP DECADES OF MONEY LAUNDERING LIKE MARCO RUBIO WHO WITHDREW ALL HIS MONEY FROM THE UNITED STATES AND PUT IT IN COLUMBIA WHICH THE UNITED STATES HAS THE RIGHT TO TAKE OVER IF THEY WANT TO BUT OUR CONGRESS IS TOTALLY STEALING MONEY HAND OVER FIST AND NO LONGER WORK FOR THE UNITED STATES OF AMERICA INSTEAD THEY SOLD OUT TO BE PUT ON THE PAYROLLS OF DONALD TRUMP AND HIS CORRUPT PROSTITUTE TALIBAN COMMUNIST LOVING DAUGHTER WHO HAS BEEN SELLING TANKS TO RUSSIA HOPING TO START A WAR BETWEEN RUSSIA AND CHINA AND WE NEED TO STOP THEM .

**CHINA IS COMMUNIST BUT THEY ARE WORKING WITH US AS THEY ARE MOVING FORWARD WITH THE WORLDS HELP IN PURCHASING THOUSANDS OF PRODUCTS BEING PRODUCED BY THE CHINESE.  THE CHINESE PEOPLE DO NOT WANT A WAR AND THE PEOPLE OF RUSSIA DO NOT WANT A WAR.  THIS IS A POLITICAL FIASCO THAT IVANLA KASHIMER WANTS AS SHE IS IN THE TEAM THAT HAS BEEN WORKING TO TAKE OVER THE UNITED STATES AND THE WORLD SO SHE AND TRUMP CAN BECOME WORLD LEADERS WITH THE BILLIONS IN KAROL MAGISTRELLI'S JUDGMENT FUND AND THEY NEED TO BE IN PRISON WITH THEIR TEAM.**

What is the true meaning of crime?
1 : **an illegal act for which someone can be punished by the government** especially : a gross violation of law. 2 : a grave offense especially against morality. 3 : criminal activity efforts to fight crime.

noun: **criminal**; plural noun: **criminals**

## 1. a person who has committed a crime. "these men are dangerous criminals"

*adjective*
adjective: **criminal**

   1.   Relating to crime.

   **"they are charged with conspiracy to commit criminal damage"**

# Final Report on the Crossover Between Respondents in Relief From Abuse Petitions and Defendants in the Criminal Docket and Use of the Victim Compensation Fund

NCJ Number
253512
Author(s)

Robin Joy
Date Published
December 2018
Length
18 pages
Annotation

This is the final report on a Vermont project whose goal was to identify, collect, and analyze data on victims of domestic assaults, to distinguish categories of victims, identify service delivery gaps and best practices for referrals to services, and analyze multi-system data to create a more comprehensive view of victimization trends.

Abstract

Domestic assault continues to be one of the top six crimes committed in Vermont. The absence of more concrete data and information on domestic-violence crime victims, especially specific populations of victims, impedes the state's ability to identify victims of domestic violence and deploy victim resources appropriately. The purpose of this collaborative project was to determine the cross-over between civil relief from abuse orders, criminal prosecutions for domestic violence, and claims made to Vermont's Victims Compensation Program. In addressing these issues, the project used data from the courts, criminal histories, and Victims Compensation Program claims. Five key findings emerged from the data analysis. One finding is that criminal court dispositions provide little information about the victims in the criminal courts. A second finding is that victims of domestic violence overwhelmingly use the civil court rather the criminal court for protection. Third, two groups of victims were identified. One group participates in the criminal domestic violence process, and the other group uses the civil process, with a limited amount of overlap. Fourth, few respondents were arrested for violating the abuse prevention order. Fifth, few victims accessed the Victim Compensation Program, with approximately 10 percent of victims applying for funds during 2014-2016. It is anticipated that these findings will be used by criminal justice policymakers, state legislators, and victim service providers in determining how to most effectively use court and community resources to serve victims of domestic assault. 5 tables

Grant Number(s)
2016-XV-GX-K006
Sponsoring Agency
Justice Research and Statistics Association
Address

10 G Street N.E., Suite 710, Washington, DC 20002, United States

Office for Victims of Crime (OVC)
Address

810 Seventh Street NW, Washington, DC 20531, United States

Sale Source
Office for Victims of Crime (OVC)   *Ignored by the USDOJ*
Address

THIS IS A FEDERAL TRADE COMMISSION FRAUD WEBSITE THAT IS CHANGED ON KAROL MAGISTRELLI'S FLASHDRIVE AND THE HOMELAND SECURITY WILL VOUCH FOR THAT. USUALLY KAROL PRINTS THEM OUT BUT BETWEEN THE NUMEROUS STALKERS HIRED BY DONALD TRUMP, MICHELLE OBAMA, BARACK OBAMA, NANCY PELOSI, JOE BIDEN, GARY MAGISTRELLI, IVANLA BY THE HUNDREDS TRUMP KASHIMER, AND SHELTER STAFF ETC SHE CANNOT KEEP ANYTHING AS THE POLICE EVERYWHERE PAY OFF EVERYONE TO BREAK INTO HER STORAGE LOCKERS, BANK VAULTS WITH A FRAUDULENTLY MISREPRESENTED WARRANT, ETC.

A CRIMINAL Enterprise!



FEDERAL TRADE COMMISSIO

DoNotCall.gov



FEDERAL TRADE COMMISSION

IdentityTheft.gov

  

helpStopFraud2.svg     js     js(1)     main(1).css     main.css     main.fda0be8ed84cd56b32ac.js.download

polyfills.4f3156dc172894cef739.js.download          polyfills-es5.ea697d443db4c6896fd0.js.download

RF-Logo-Seal-244873-KO-v2.svg          RF-Logo-Seal-NEW-01.svg

runtime.93e80aba0305dfeea4a7.js.download          scripts.69a46af7526a16075773.js.download

styles.e6a539b4086a848b58f3.js.download

To-Do2.svg

Universal-Federated-Analytics-Min.js.download

webchat-es5.js.download

analytics.js.download

embed.min.js.download

foreseeScript.js.download

fs.feedback.js.download

fs.invite.js.download

fs.mouseoff.js.download

fs.survey.js.download

fs.trigger.js.download

fs.utils.js.download

gateway.min.js.download

*Microsoft was ordered to hack by Nancy Pelosi in The Corner Shelter*

# Macros or VBA code found

*Excel for Microsoft 365 Word for Microsoft 365 PowerPoint for Microsoft 365 Excel 2021 Word 2021 PowerPoint 2021 Excel 2019 Word 2019 PowerPoint 2019 Excel 2016 Word 2016 PowerPoint 2016 Excel 2013 Word 2013 PowerPoint 2013 Excel 2010 Word 2010 PowerPoint 2010 More...Less*

The Document Inspector found one or more of the following items that may contain hidden data in your Office document (Word, Excel, or PowerPoint):

- Macros (including any WordBasic macros in Word documents or Excel 4.0 Macro Sheets (XLM) in Excel workbooks)
- VBA modules
- COM or ActiveX controls
- User Forms (including any Excel 5.0 Forms in Excel workbooks)
- User-Defined Functions (UDFs) in Excel workbooks

## Issue

AS KAROL WROTE HER QUI TAM AS BEST SHE CAN WITH THE THREATS OF DEATH AT HER DOOR AND A BUNCH OF WHOMEVER BLOWING THEIR NOSES TELLING HER NOW HER DAUGHTER IS OUTSIDE AND SHE HAS TO LEAVE IMMEDIATELY OR SHELL NEVER SEE HER AGAIN,   AFTER 14 YEARS OF THIS B.S. KAROL DOESN'T LISTEN AND AS OF LAST NIGHT JARED KUSHNERS HAD HER INSIDE SOME BAPTIST CHURCH ALLEGEDLY. She is severely mentally disabled due to bludgeoning by DONALD TRUMP AND BARACK OBAMA, MICHELLE AND SASHA OBAMA TWO EVIL WOMEN,  JOE BIDEN, MICHAEL HOROWITZ, AOC, NUMEROUS CONGRESSIONAL REPS AND MORE BECAUSE THEY WANT THE MONEY FROM KAROL MAGISTRELLI'S JUDGEMENT FUND.

**The Document Inspector can't remove these items for you, because removing these items may cause your document to stop working properly.**

# Recommended solution

1. Close the Document Inspector.
2. Manually remove any macros, VBA modules, COM or ActiveX controls, user forms, or UDFs that might have hidden data from your document.

   Here's how you can find macros and VBA modules in your document:

   - In Word or Excel, click View > Macro > View Macros.

In PowerPoint, click View > Macro.

In the Macro box, pick the macro you want to remove and click Delete.

○ Press Alt+F11 to find macros in the VBA Editor.

3. To verify the issue is resolved, click File > Info > Check for Issues, and click Inspect Document.



Pelosi conspired to cyberstalk the shelter with Directors Robin & Scott — & other staff members. Pelosi used microsoft on Kamols phones!

# Chapter 5: Copyright Infringement and Remedies

*By Every Detentant who filed!
Anything Related,*

## 501. Infringement of copyright[3] ()

(a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a) (/title17/92chap1.html#106A), or who imports copies or phonorecords into the United States in violation of section 602 (/title17/92chap6.html#602), is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506 (/title17/92chap5.html#506)), any reference to copyright shall be deemed to include the rights conferred by section 106A(a) (/title17/92chap1.html#106A). As used in this subsection, the term "anyone" includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity.

(b) The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411 (/title17/92chap4.html#411), to institute an action for any infringement of that particular right committed while he or she is the owner of it. The court may require such owner to serve written notice of the action with a copy of the complaint upon any person shown, by the records of the Copyright Office or otherwise, to have or claim an interest in the copyright, and shall require that such notice be served upon any person whose interest is likely to be affected by a decision in the case. The court may require the joinder, and shall permit the intervention, of any person having or claiming an interest in the copyright.

(c) For any secondary transmission by a cable system that embodies a performance or a display of a work which is actionable as an act of infringement under subsection (c) of section 111 (/title17/92chap1.html#111), a television broadcast station holding a copyright or other license to transmit or perform the same version of that work shall, for purposes of subsection (b) of this section, be treated as a legal or beneficial owner if such secondary transmission occurs within the local service area of that television station.

(d) For any secondary transmission by a cable system that is actionable as an act of infringement pursuant to section 111(c)(3) (/title17/92chap1.html#111), the following shall also have standing to sue: (i) the primary transmitter whose transmission has been altered by the cable system; and (ii) any broadcast station within whose local service area the secondary transmission occurs.

(e) With respect to any secondary transmission that is made by a satellite carrier of a performance or display of a work embodied in a primary transmission and is actionable as an act of infringement under section 119(a)(3) (/title17/92chap1.html#119), a network station holding a copyright or other license to transmit or perform the same version of that work shall, for purposes of subsection (b) of this section, be treated as a legal or beneficial owner if such secondary transmission occurs within the local service area of that station.

(f)(1) With respect to any secondary transmission that is made by a satellite carrier of a performance or display of a work embodied in a primary transmission and is actionable as an act of infringement under section 122 (/title17/92chap1.html#122), a television broadcast station holding a copyright or other license to transmit or perform the same version of that work shall, for purposes of subsection (b) of this section, be treated as a legal or beneficial owner if such secondary transmission occurs within the local market of that station.

(2) A television broadcast station may file a civil action against any satellite carrier that has refused to carry television broadcast signals, as required under section 122(a)(2) (/title17/92chap1.html#122), to

enforce that television broadcast station's rights under section 338(a) of the Communications Act of 1934.

## 502. Remedies for infringement: Injunctions

(a) Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

(b) Any such injunction may be served anywhere in the United States on the person enjoined; it shall be operative throughout the United States and shall be enforceable, by proceedings in contempt or otherwise, by any United States court having jurisdiction of that person. The clerk of the court granting the injunction shall, when requested by any other court in which enforcement of the injunction is sought, transmit promptly to the other court a certified copy of all the papers in the case on file in such clerk's office.

## 503. Remedies for infringement: Impounding and disposition of infringing articles[4] ()

(a)(1) At any time while an action under this title is pending, the court may order the impounding, on such terms as it may deem reasonable—

(A) of all copies or phonorecords claimed to have been made or used in violation of the exclusive right of the copyright owner;

(B) of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced; and

(C) of records documenting the manufacture, sale, or receipt of things involved in any such violation, provided that any records seized under this subparagraph shall be taken into the custody of the court.

(2) For impoundments of records ordered under paragraph (1)(C), the court shall enter an appropriate protective order with respect to discovery and use of any records or information that has been impounded. The protective order shall provide for appropriate procedures to ensure that confidential, private, proprietary, or privileged information contained in such records is not improperly disclosed or used.

(3) The relevant provisions of paragraphs (2) through (11) of section 34(d) of the Trademark Act (15 U.S.C. 1116(d)(2) through (11)) shall extend to any impoundment of records ordered under paragraph (1)(C) that is based upon an ex parte application, notwithstanding the provisions of rule 65 of the Federal Rules of Civil Procedure. Any references in paragraphs (2) through (11) of section 34(d) of the Trademark Act to section 32 of such Act shall be read as references to section 501 (/title17/92chap5.html#501) of this title, and references to use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services shall be read as references to infringement of a copyright.

(b) As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced.

## 504. Remedies for infringement: Damages and profits[5] ()

(a) In General.—Except as otherwise provided by this title, an infringer of copyright is liable for either—

(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or

(2) statutory damages, as provided by subsection (c).

(b) Actual Damages and Profits.—The copyright owner is entitled to recover the actual damages suffered by

him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

(c) Statutory Damages.—

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are li-able jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200. The court shall remit statutory damages in any case where an infringer believed and had reasonable grounds for believing that his or her use of the copyrighted work was a fair use under section 107 (/title17/92chap1.html#107), if the infringer was: (i) an employee or agent of a nonprofit educational institution, library, or archives acting within the scope of his or her employment who, or such institution, library, or archives itself, which infringed by reproducing the work in copies or phonorecords; or (ii) a public broadcasting entity which or a person who, as a regular part of the nonprofit activities of a public broadcasting entity (as defined in section 118(f ) (/title17/92chap1.html#118)) infringed by performing a published nondramatic literary work or by reproducing a transmission program embodying a performance of such a work.

(3) (A) In a case of infringement, it shall be a rebuttable presumption that the infringement was committed willfully for purposes of determining relief if the violator, or a person acting in concert with the violator, knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority in registering, maintaining, or renewing a domain name used in connection with the infringement. *Everything was done knowingly!*

(B) Nothing in this paragraph limits what may be considered willful infringement under this subsection.

(C) For purposes of this paragraph, the term "domain name" has the meaning given that term in section 45 of the Act entitled "An Act to provide for the registration and protection of trademarks used in commerce, to carry out the provisions of certain international conventions, and for other purposes" approved July 5, 1946 (commonly referred to as the "Trademark Act of 1946"; 15 U .S .C . 1127).

(d) Additional Damages in Certain Cases.—In any case in which the court finds that a defendant proprietor of an establishment who claims as a defense that its activities were exempt under section 110(5) (/title17 /92chap1.html#110) did not have reasonable grounds to believe that its use of a copyrighted work was exempt under such section, the plaintiff shall be entitled to, in addition to any award of damages under this section, an additional award of two times the amount of the license fee that the proprietor of the establishment concerned should have paid the plaintiff for such use during the preceding period of up to 3 years.

## 505. Remedies for infringement: Costs and attorney's fees

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

## 506. Criminal offenses[6] ()

(a) Criminal Infringement.—

(1) In general.—Any person who willfully infringes a copyright shall be punished as provided under section 2319 of title 18, if the infringement was committed—

(A) for purposes of commercial advantage or private financial gain;

(B) by the reproduction or distribution, including by electronic means, during any 180-day period, of 1 or more copies or phonorecords of 1 or more copyrighted works, which have a total retail value of more than $1,000; or

(C) by the distribution of a work being prepared for commercial distribution, by making it available on a computer network accessible to members of the public, if such person knew or should have known that the work was intended for commercial distribution.

(2) Evidence.—For purposes of this subsection, evidence of reproduction or distribution of a copyrighted work, by itself, shall not be sufficient to establish willful infringement of a copyright.

(3) Definition.—In this subsection, the term "work being prepared for commercial distribution" means—

(A) a computer program, a musical work, a motion picture or other audiovisual work, or a sound recording, if, at the time of unauthorized distribution—

(i) the copyright owner has a reasonable expectation of commercial distribution; and

(ii) the copies or phonorecords of the work have not been commercially distributed; or

(B) a motion picture, if, at the time of unauthorized distribution, the motion picture—

(i) has been made available for viewing in a motion picture exhibition facility; and

(ii) has not been made available in copies for sale to the general public in the United States in a format intended to permit viewing outside a motion picture exhibition facility.

(b) Forfeiture, Destruction, and Restitution.—Forfeiture, destruction, and restitution relating to this section shall be subject to section 2323 of title 18, to the extent provided in that section, in addition to any other similar remedies provided by law.

(c) Fraudulent Copyright Notice.—Any person who, with fraudulent intent, places on any article a notice of copyright or words of the same purport that such person knows to be false, or who, with fraudulent intent, publicly distributes or imports for public distribution any article bearing such notice or words that such person knows to be false, shall be fined not more than $2,500.

(d) Fraudulent Removal of Copyright Notice.—Any person who, with fraudulent intent, removes or alters any notice of copyright appearing on a copy of a copyrighted work shall be fined not more than $2,500.

(e) False Representation.—Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409 (/title17/92chap4.html#409), or in any written statement filed in connection with the application, shall be fined not more than $2,500.

(f) Rights of Attribution and Integrity.—Nothing in this section applies to infringement of the rights conferred by section 106A(a) (/title17/92chap1.html#106A).

### 507. Limitations on actions[7] ()

(a) Criminal Proceedings.—Except as expressly provided otherwise in this title, no criminal proceeding shall be maintained under the provisions of this title unless it is commenced within 5 years after the cause of action arose.

(b) Civil Actions.—No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.

### 508. Notification of filing and determination of actions

(a) Within one month after the filing of any action under this title, the clerks of the courts of the United States shall send written notification to the Register of Copyrights setting forth, as far as is shown by the papers filed in the court, the names and addresses of the parties and the title, author, and registration number of each work involved in the action. If any other copyrighted work is later included in the action by amendment, answer, or other pleading, the clerk shall also send a notification concerning it to the Register within one month after the pleading is filed.

(b) Within one month after any final order or judgment is issued in the case, the clerk of the court shall notify the Register of it, sending with the notification a copy of the order or judgment together with the written opinion, if any, of the court.

(c) Upon receiving the notifications specified in this section, the Register shall make them a part of the public records of the Copyright Office.

### 509. [Repealed][8] ()

### 510. Remedies for alteration of programming by cable systems [9] ()    *(1 Ase eKT, Ensmgrwn Facebuk,)*

(a) In any action filed pursuant to section 111(3) (/title17/92chap1.html#111), the following remedies shall be available:

(1) Where an action is brought by a party identified in subsections (b) or

(c) of section 501 (/title17/92chap5.html#501), the remedies provided by sections 502 through 505, and the remedy provided by subsection (b) of this section; and

(2) When an action is brought by a party identified in subsection (d) of section 501 (/title17 /92chap5.html#501), the remedies provided by sections 502 and 505, together with any actual damages suffered by such party as a result of the infringement, and the remedy provided by subsection (b) of this section.

(b) In any action filed pursuant to section 111(3) (/title17/92chap1.html#111), the court may decree that, for a period not to exceed thirty days, the cable system shall be deprived of the benefit of a statutory license for one or more distant signals carried by such cable system.

### 511. Liability of States, instrumentalities of States, and State officials for infringement of copyright[10] ()

(a) In General.—Any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity, shall not be immune, under the Eleventh Amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal Court by any person, including any governmental or nongovernmental entity, for a violation of any of the exclusive rights of a copyright owner provided by sections 106 through 122, for importing copies of

phonorecords in violation of section 602 (/title17/92chap6.html#602), or for any other violation under this title.

(b) Remedies.—In a suit described in subsection (a) for a violation described in that subsection, remedies (including remedies both at law and in equity) are available for the violation to the same extent as such remedies are available for such a violation in a suit against any public or private entity other than a State, instrumentality of a State, or officer or employee of a State acting in his or her official capacity. Such remedies include impounding and disposition of infringing articles under section 503 (/title17/92chap5.html#503), actual damages and profits and statutory damages under section 504 (/title17/92chap5.html#504), costs and attorney's fees under section 505 (/title17/92chap5.html#505), and the remedies provided in section 510 (/title17/92chap5.html#510).

## 512. Limitations on liability relating to material online[11] ()

(a) Transitory Digital Network Communications.—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the provider's transmitting, routing, or providing connections for, material through a system or network controlled or operated by or for the service provider, or by reason of the intermediate and transient storage of that material in the course of such transmitting, routing, or providing connections, if—

(1) the transmission of the material was initiated by or at the direction of a person other than the service provider;

(2) the transmission, routing, provision of connections, or storage is carried out through an automatic technical process without selection of the material by the service provider;

(3) the service provider does not select the recipients of the material except as an automatic response to the request of another person;

(4) no copy of the material made by the service provider in the course of such intermediate or transient storage is maintained on the system or network in a manner ordinarily accessible to anyone other than anticipated recipients, and no such copy is maintained on the system or network in a manner ordinarily accessible to such anticipated recipients for a longer period than is reasonably necessary for the transmission, routing, or provision of connections; and

(5) the material is transmitted through the system or network without modification of its content.

(b) System Caching.—

(1) Limitation on liability.—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the intermediate and temporary storage of material on a system or network controlled or operated by or for the service provider in a case in which—

(A) the material is made available online by a person other than the service provider;

(B) the material is transmitted from the person described in subparagraph (A) through the system or network to a person other than the person described in subparagraph (A) at the direction of that other person; and

(C) the storage is carried out through an automatic technical process for the purpose of making the material available to users of the system or network who, after the material is transmitted as described in subparagraph (B), request access to the material from the person described in subparagraph (A), if the conditions set forth in paragraph (2) are met.

(2) Conditions.—The conditions referred to in paragraph (1) are that—

(A) the material described in paragraph (1) is transmitted to the subsequent users described in paragraph (1)(C) without modification to its content from the manner in which the material was transmitted from the person described in paragraph (1)(A);

(B) the service provider described in paragraph (1) complies with rules concerning the refreshing, reloading, or other updating of the material when specified by the person making the material available online in accordance with a generally accepted industry standard data communications protocol for the system or network through which that person makes the material available, except that this subparagraph applies only if those rules are not used by the person described in paragraph (1)(A) to prevent or unreasonably impair the intermediate storage to which this subsection applies;

(C) the service provider does not interfere with the ability of technology associated with the material to return to the person described in paragraph (1)(A) the information that would have been available to that person if the material had been obtained by the subsequent users described in paragraph (1)(C) directly from that person, except that this subparagraph applies only if that technology—

(i) does not significantly interfere with the performance of the provider's system or network or with the intermediate storage of the material;

(ii) is consistent with generally accepted industry standard communications protocols; and

(iii) does not extract information from the provider's system or network other than the information that would have been available to the person described in paragraph (1)(A) if the subsequent users had gained access to the material directly from that person;

(D) if the person described in paragraph (1)(A) has in effect a condition that a person must meet prior to having access to the material, such as a condition based on payment of a fee or provision of a password or other information, the service provider permits access to the stored material in significant part only to users of its system or network that have met those conditions and only in accordance with those conditions; and

(E) if the person described in paragraph (1)(A) makes that material available online without the authorization of the copyright owner of the material, the service provider responds expeditiously to remove, or disable access to, the material that is claimed to be infringing upon notification of claimed infringement as described in subsection (c)(3), except that this subparagraph applies only if—

(i) the material has previously been removed from the originating site or access to it has been disabled, or a court has ordered that the material be removed from the originating site or that access to the material on the originating site be disabled; and

(ii) the party giving the notification includes in the notification a statement confirming that the material has been removed from the originating site or access to it has been disabled or that a court has ordered that the material be removed from the originating site or that access to the material on the originating site be disabled.

(c) Information Residing on Systems or Networks at Direction of Users.—

(1) In general.—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider, if the service provider—

(A)(i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;

(ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or

(iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;

(B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and

(C) upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

(2) Designated agent.—The limitations on liability established in this subsection apply to a service provider only if the service provider has designated an agent to receive notifications of claimed infringement described in paragraph (3), by making available through its service, including on its website in a location accessible to the public, and by providing to the Copyright Office, substantially the following information:

(A) the name, address, phone number, and electronic mail address of the agent.

(B) other contact information which the Register of Copyrights may deem appropriate.

The Register of Copyrights shall maintain a current directory of agents available to the public for inspection, including through the Internet, and may require payment of a fee by service providers to cover the costs of maintaining the directory.

(3) Elements of notification.—

(A) To be effective under this subsection, a notification of claimed infringement must be a written communication provided to the designated agent of a service provider that includes substantially the following:

(i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

(ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.

(iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.

(iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.

(v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

(vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

(B)(i) Subject to clause (ii), a notification from a copyright owner or from a person authorized to act on behalf of the copyright owner that fails to comply substantially with the provisions of subparagraph (A)

shall not be considered under paragraph (1)(A) in determining whether a service provider has actual knowledge or is aware of facts or circumstances from which infringing activity is apparent.

(ii) In a case in which the notification that is provided to the service provider's designated agent fails to comply substantially with all the provisions of subparagraph (A) but substantially complies with clauses (ii), (iii), and (iv) of subparagraph (A), clause (i) of this subparagraph applies only if the service provider promptly attempts to contact the person making the notification or takes other reasonable steps to assist in the receipt of notification that substantially complies with all the provisions of subparagraph (A).

(d) Information Location Tools.—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the provider referring or linking users to an online location containing infringing material or infringing activity, by using information location tools, including a directory, index, reference, pointer, or hypertext link, if the service provider—

(1) (A) does not have actual knowledge that the material or activity is infringing;

(A) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or

(B) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;

(2) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and

(3) upon notification of claimed infringement as described in subsection (c)(3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity, except that, for purposes of this paragraph, the information described in subsection (c)(3)(A)(iii) shall be identification of the reference or link, to material or activity claimed to be infringing, that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate that reference or link.

(e) Limitation on Liability of Nonprofit Educational Institutions.—

(1) When a public or other nonprofit institution of higher education is a service provider, and when a faculty member or graduate student who is an employee of such institution is performing a teaching or research function, for the purposes of subsections (a) and (b) such faculty member or graduate student shall be considered to be a person other than the institution, and for the purposes of subsections

(c) and (d) such faculty member's or graduate student's knowledge or awareness of his or her infringing activities shall not be attributed to the institution, if—

(A) such faculty member's or graduate student's infringing activities do not involve the provision of online access to instructional materials that are or were required or recommended, within the preceding 3-year period, for a course taught at the institution by such faculty member or graduate student;

(B) the institution has not, within the preceding 3-year period, received more than 2 notifications described in subsection (c)(3) of claimed infringement by such faculty member or graduate student, and such notifications of claimed infringement were not actionable under subsection (f); and

(C) the institution provides to all users of its system or network informational materials that accurately describe, and promote compliance with, the laws of the United States relating to copyright.

(2) For the purposes of this subsection, the limitations on injunctive relief contained in subsections (j)(2) and (j)(3), but not those in (j)(1), shall apply.

(f) Misrepresentations.—Any person who knowingly materially misrepresents under this section—

(1) that material or activity is infringing, or

(2) that material or activity was removed or disabled by mistake or misidentification, shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

(g) Replacement of Removed or Disabled Material and Limitation on Other Liability.—

(1) No liability for taking down generally.—Subject to paragraph (2), a service provider shall not be liable to any person for any claim based on the service provider's good faith disabling of access to, or removal of, material or activity claimed to be infringing or based on facts or circumstances from which infringing activity is apparent, regardless of whether the material or activity is ultimately determined to be infringing.

(2) Exception.—Paragraph (1) shall not apply with respect to material residing at the direction of a subscriber of the service provider on a system or network controlled or operated by or for the service provider that is removed, or to which access is disabled by the service provider, pursuant to a notice provided under subsection (c)(1)(C), unless the service provider—

(A) takes reasonable steps promptly to notify the subscriber that it has removed or disabled access to the material;

(B) upon receipt of a counter notification described in paragraph (3), promptly provides the person who provided the notification under subsection (c)(1)(C) with a copy of the counter notification, and informs that person that it will replace the removed material or cease disabling access to it in 10 business days; and

(C) replaces the removed material and ceases disabling access to it not less than 10, nor more than 14, business days following receipt of the counter notice, unless its designated agent first receives notice from the person who submitted the notification under subsection (c)(1)(C) that such person has filed an action seeking a court order to restrain the subscriber from engaging in infringing activity relating to the material on the service provider's system or network.

(3) Contents of counter notification.—To be effective under this subsection, a counter notification must be a written communication provided to the service provider's designated agent that includes substantially the following:

(A) A physical or electronic signature of the subscriber.

(B) Identification of the material that has been removed or to which access has been disabled and the location at which the material appeared before it was removed or access to it was disabled.

(C) A statement under penalty of perjury that the subscriber has a good faith belief that the material was removed or disabled as a result of mistake or misidentification of the material to be removed or disabled.

(D) The subscriber's name, address, and telephone number, and a statement that the subscriber consents to the jurisdiction of Federal District Court for the judicial district in which the address is located,

or if the subscriber's address is outside of the United States, for any judicial district in which the service provider may be found, and that the subscriber will accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person.

(4) Limitation on other liability.—A service provider's compliance with paragraph (2) shall not subject the service provider to liability for copyright infringement with respect to the material identified in the notice provided under subsection (c)(1)(C).

(h) Subpoena to Identify Infringer.—

(1) Request.—A copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection.

(2) Contents of request.—The request may be made by filing with the clerk—

(A) a copy of a notification described in subsection (c)(3)(A);

(B) a proposed subpoena; and

(C) a sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title.

(3) Contents of subpoena.—The subpoena shall authorize and order the service provider receiving the notification and the subpoena to expeditiously disclose to the copyright owner or person authorized by the copyright owner information sufficient to identify the alleged infringer of the material described in the notification to the extent such information is available to the service provider.

(4) Basis for granting subpoena.—If the notification filed satisfies the provisions of subsection (c)(3)(A), the proposed subpoena is in proper form, and the accompanying declaration is properly executed, the clerk shall expeditiously issue and sign the proposed subpoena and return it to the requester for delivery to the service provider.

(5) Actions of service provider receiving subpoena.—Upon receipt of the issued subpoena, either accompanying or subsequent to the receipt of a notification described in subsection (c)(3)(A), the service provider shall expeditiously disclose to the copyright owner or person authorized by the copyright owner the information required by the subpoena, notwithstanding any other provision of law and regardless of whether the service provider responds to the notification.

(6) Rules applicable to subpoena.—Unless otherwise provided by this section or by applicable rules of the court, the procedure for issuance and delivery of the subpoena, and the remedies for noncompliance with the subpoena, shall be governed to the greatest extent practicable by those provisions of the Federal Rules of Civil Procedure governing the issuance, service, and enforcement of a subpoena duces tecum.

(i) Conditions for Eligibility.—

(1) Accommodation of technology.—The limitations on liability established by this section shall apply to a service provider only if the service provider—

(A) has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers; and

(B) accommodates and does not interfere with standard technical measures.

(2) Definition.—As used in this subsection, the term "standard technical measures" means technical measures that are used by copyright owners to identify or protect copyrighted works and—

(A) have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process;

(B) are available to any person on reasonable and nondiscriminatory terms; and

(C) do not impose substantial costs on service providers or substantial burdens on their systems or networks.

(j) Injunctions.—The following rules shall apply in the case of any application for an injunction under section 502 (/title17/92chap5.html#502) against a service provider that is not subject to monetary remedies under this section:

(1) Scope of relief.—(A) With respect to conduct other than that which qualifies for the limitation on remedies set forth in subsection (a), the court may grant injunctive relief with respect to a service provider only in one or more of the following forms:

(i) An order restraining the service provider from providing access to infringing material or activity residing at a particular online site on the provider's system or network.

(ii) An order restraining the service provider from providing access to a subscriber or account holder of the service provider's system or network who is engaging in infringing activity and is identified in the order, by terminating the accounts of the subscriber or account holder that are specified in the order.

(iii) Such other injunctive relief as the court may consider necessary to prevent or restrain infringement of copyrighted material specified in the order of the court at a particular online location, if such relief is the least burdensome to the service provider among the forms of relief comparably effective for that purpose.

(B) If the service provider qualifies for the limitation on remedies described in subsection (a), the court may only grant injunctive relief in one or both of the following forms:

(i) An order restraining the service provider from providing access to a subscriber or account holder of the service provider's system or network who is using the provider's service to engage in infringing activity and is identified in the order, by terminating the accounts of the subscriber or account holder that are specified in the order.

(ii) An order restraining the service provider from providing access, by taking reasonable steps specified in the order to block access, to a specific, identified, online location outside the United States.

(2) Considerations.—The court, in considering the relevant criteria for injunctive relief under applicable law, shall consider—

(A) whether such an injunction, either alone or in combination with other such injunctions issued against the same service provider under this subsection, would significantly burden either the provider or the operation of the provider's system or network;

(B) the magnitude of the harm likely to be suffered by the copyright owner in the digital network environment if steps are not taken to prevent or restrain the infringement;

(C) whether implementation of such an injunction would be technically feasible and effective, and would not interfere with access to noninfringing material at other online locations; and

(D) whether other less burdensome and comparably effective means of preventing or restraining access to the infringing material are available.

(3) Notice and ex parte orders.—Injunctive relief under this subsection shall be available only after notice to the service provider and an opportunity for the service provider to appear are provided, except for orders ensuring the preservation of evidence or other orders having no material adverse effect on the operation of the service provider's communications network.

(k) Definitions.—

(1) Service provider.—(A) As used in subsection (a), the term "service provider" means an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received.

(B) As used in this section, other than subsection (a), the term "service provider" means a provider of online services or network access, or the operator of facilities therefor, and includes an entity described in subparagraph (A).

(2) Monetary relief.—As used in this section, the term "monetary relief " means damages, costs, attorneys' fees, and any other form of monetary payment.

(l) Other Defenses Not Affected.—The failure of a service provider's conduct to qualify for limitation of liability under this section shall not bear adversely upon the consideration of a defense by the service provider that the service provider's conduct is not infringing under this title or any other defense.

(m) Protection of Privacy.—Nothing in this section shall be construed to condition the applicability of subsections (a) through (d) on—

(1) a service provider monitoring its service or affirmatively seeking facts indicating infringing activity, except to the extent consistent with a standard technical measure complying with the provisions of subsection (i); or

(2) a service provider gaining access to, removing, or disabling access to material in cases in which such conduct is prohibited by law.

(n) Construction.—Subsections (a), (b), (c), and (d) describe separate and distinct functions for purposes of applying this section. Whether a service provider qualifies for the limitation on liability in any one of those subsections shall be based solely on the criteria in that subsection, and shall not affect a determination of whether that service provider qualifies for the limitations on liability under any other such subsection.

## 513. Determination of reasonable license fees for individual proprietors[12] ()

In the case of any performing rights society subject to a consent decree which provides for the determination of reasonable license rates or fees to be charged by the performing rights society, notwithstanding the provisions of that consent decree, an individual proprietor who owns or operates fewer than 7 nonpublicly traded establishments in which nondramatic musical works are performed publicly and who claims that any license agreement offered by that performing rights society is unreasonable in its license rate or fee as to that individual proprietor, shall be entitled to determination of a reasonable license rate or fee as follows:

(1) The individual proprietor may commence such proceeding for determination of a reasonable license rate or fee by filing an application in the applicable district court under paragraph (2) that a rate disagreement exists and by serving a copy of the application on the performing rights society. Such

TABLE of AUTHORITIES  Preliminary

18 USC 2381 — TREASON

18 USC 7102  TRAFFICKING & SLAVERY
— DONE BY FBI,
FBIS Human Trafficing division
Vineyard CHurch
Chris Wray — FBI
James Comey
Nancy Pelosi
Donald Trump
Warner Kastimer

Even The U.S.D. OJ WONT Rescue
— my deuughters — from Slavery.

31 USC — 3729 — OMG False Claims
Not an honest Party
In the entire govt !

# 31 U.S. Code § 3729 - False claims

(a)LIABILITY FOR CERTAIN ACTS.—

(1)IN GENERAL.—Subject to paragraph (2), any person who—

(A)

**Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;**

(B)

**knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;**

(C)

**Conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);**

(D)

**has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;**

(E)

**is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;**

(F)

**knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge property; or**

(G)

knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104–410 [1]), plus 3 times the amount of damages which the Government sustains because of the act of that person.

**(2)REDUCED DAMAGES.**—If the court finds that—

**(A)**

the person committing the violation of this subsection furnished officials of the United States responsible for investigating false claims violations with all information known to such person about the violation within 30 days after the date on which the defendant first obtained the information;

**(B)**

such person fully cooperated with any Government investigation of such violation; and

**(C)**

at the time such person furnished the United States with the information about the violation, no criminal prosecution, civil action, or administrative action had commenced under this title with respect to such violation, and the person did not have actual knowledge of the existence of an investigation into such violation,

the court may assess not less than 2 times the amount of damages which the Government sustains because of the act of that person.

**(3)COSTS OF CIVIL ACTIONS.**—

A person violating this subsection shall also be liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages.

**(b)DEFINITIONS.**—For purposes of this section—

**(1)**the terms "knowing" and "knowingly"—

**(A)**mean that a person, with respect to information—

**(i)**

has actual knowledge of the information;

**(ii)**

acts in deliberate ignorance of the truth or falsity of the information; or

**(iii)**

acts in reckless disregard of the truth or falsity of the information; and

**(B)**

require no proof of specific intent to defraud;

**(2)** The term "claim"—

**(A)** Means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—

**(i)**

is presented to an officer, employee, or agent of the United States; or

**(ii)**is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

    **(I)**      Provides or has provided any portion of the money or property requested or demanded; or

**(II)**

will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; and

**(B)**

does not include requests or demands for money or property that the Government has paid to an individual as compensation for Federal employment or as an income subsidy with no restrictions on that individual's use of the money or property;

## (3)

the term "obligation" means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment; and

## (4)

the term "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.

**(c)EXEMPTION FROM DISCLOSURE.—**
Any information furnished pursuant to subsection (a)(2) shall be exempt from disclosure under section 552 of title 5.

**(d)EXCLUSION.—**
This section does not apply to claims, records, or statements made under the Internal Revenue Code of 1986.

(Pub. L. 97–258, Sept. 13, 1982, 96 Stat. 978; Pub. L. 99–562, § 2, Oct. 27, 1986, 100 Stat. 3153; Pub. L. 103–272, § 4(f)(1)(O), July 5, 1994, 108 Stat. 1362; Pub. L. 111–21, § 4(a), May 20, 2009, 123 Stat. 1621.)

The FTC, Homeland Security, FBI DoD, DEA, CIA, Congress etc' Oced & stole KAnus money aiding & & ABetting thousands of hit men!

KDAA

Wherefore KAROL Prays:

A. That an Injunction is
   ordered against infringment of
   KAROL Magistrellis Documents,
   United HealthCare, under
   28 USC 1498, under 502. 5 USC,
   Copyright infringment it can be
   served to Anyone in The United
   States

5 USC #503 → The Court may order the
   impounding & All stolen
   Documents and Judgment funds
   a Desert Financial Bank
   Accounts (see pg 2 & 14 Copyright
   laws file 17 —

   KAROL is entitled to Actual
   Damages & Profits —
   Punitive Damages, & Damages
   under the Privacy Act, Cable & Communic.
                                         Act
   18 USC 1030 2261, 2511, 1519,

B. That Every DEFENDANT IS charged
   WITH Knowing Treason With
   Vladimir Putin & IS
   forced to forfeit everything
   They own to prevent Them
   from doing This again.

C. They should All Be charged
   with 20 yrs for Treason +
   Those in government life
   Racketeering with Vladimir
   Putin & Russia,

Verification

Pursuant to laws of perjury in ILCS 5/1=9 the undersigned certifies That The statements herein Are true to the best of her knowledge.

Karol Magistrelli                    11-23-22

STATE OF Wyoming
COUNTY OF Natrona

Sworn to (or affirmed) and subscribed before me
this 23 day of Nov, 2022,
by Karol Dawn Magistrelli

Serina Aagard          Serina Aagard
Notary Public's Signature     Notary Name
My Commission Expires 12-19-2022

